STATE EX REL. NISSLER ET AL., RELATORS, *v.* DONLAN, JUDGE, ET AL., RESPONDENTS.

(No. 2,176.)

(Submitted March 11, 1905. Decided March 31, 1905.)

*Prohibition—District Courts—Departments—Rules for Distribution of Business—Effect—Prejudice of Judge—Change of Venue—Application—Time—Probate Proceedings—Statutes.*

District Courts—Departments—Rules—Jurisdiction.
1. The several departments of a district court, presided over by different judges, constitute but one court; and the assignment of any portion of the business, by virtue of its rules, to any department,

still leaves it pending in the district court, and jurisdiction is not lost by the fact that it may theretofore have been pending in another department or before another judge.

District Courts—Rules—Force and Effect.
2. After the district court has adopted rules, under the limitations prescribed by Code of Civil Procedure, section 111, they have the force of statutes, and become binding upon it and litigants.

District Courts—Rules—To be Enforced—When.
3. Rules of district courts should be enforced, except when the court, for good cause shown, relaxes them in order that justice may be done.

District Courts—Departments—Distribution of Business—Order Binding.
4. After a district court, consisting of two or more departments, has distributed its business among the several departments by an order, concurred in by all the judges, such order should be held binding, even in the absence of rules, until revoked or modified by the authority that made it.

Statutes—Fair Trial—Bias and Prejudice—Judges—Disqualification— Probate Proceedings.
5. The provisions of section 180 of the Code of Civil Procedure, as amended by Act of 1903 (Laws 1903, Second Extra. Session, p. 9); declaring that no judge shall continue to preside in any action or proceeding after an affidavit of bias or prejudice on his part has been filed, are applicable to probate proceedings.

What Constitutes a "Hearing."
6. A "hearing" includes the trial of the case, a hearing on a motion, or a hearing in a proceeding of any character.

Action—Proceeding—What is Included in Terms.
7. The words "action" and "proceeding" include all intermediate steps to be taken in an action or proceeding.

Motion—Step in Case.
8. A "motion" is but a step or proceeding in a case.

Statutes—Fair Trial—Judges—Disqualification—Affidavit—When to be Filed.
9. Under Code of Civil Procedure, section 180, as amended by Laws of 1903 (Second Extra. Session, page 9), providing that no judge shall act in any civil action or proceeding in which an affidavit of disqualification has been filed at any time before the day fixed for the trial or hearing, such affidavit is not effective to interrupt a hearing after the day fixed for it, no matter whether it be a final hearing or trial, or merely a step taken in the case involving a decision of some controverted matter.

Statutes Open to Abuse—How to be Construed.
10. Where a statute is open to much abuse, it will be strictly construed according to its express terms, and its provisions will not be broadened by implication so as to include conditions not clearly within them.

District Courts—Referees—Findings and Recommendations—Setting Aside.
11. *Quaere* May a trial court disregard the findings and recommendations of a referee, under an order of reference contemplating the report of a final decree settling an account in accordance with the findings of fact and conclusions of law of the referee?

Prohibition—Judges—Disqualification—Fair Trial.
12. Prohibition does not lie to stay a district judge from proceeding, further in the hearing of a motion made in a probate proceeding,

where an affidavit of disqualification was not filed before the day fixed for the hearing of such motion.   (Laws of 1903, Second Extra. Session, p. 9.)

ORIGINAL application by the state, on relation of Christine Nissler and others, for prohibition to restrain Michael Donlan, as judge of the district court of the second judicial district, for the county of Silver Bow, and to restrain such court, from proceeding to hear a motion to confirm the report of a referee on objections to the account of J. K. Heslet as executor of the last will and testament of Christian Nissler, deceased.   Alternative writ vacated and proceedings dismissed.

## STATEMENT OF THE CASE BY THE JUSTICE DELIVERING THE OPINION.

Application for writ of prohibition.   On May 1, 1904, J. K. Heslet, executor of the last will and testament of Christian Nissler, deceased, filed in department 3 of the district court of Silver Bow county, to which department probate proceedings had been assigned, an account of his administration of the estate, showing his receipts and disbursements up to that date.   The relators, being beneficiaries under the will, on behalf of themselves, and also as guardians of other beneficiaries who were minors, filed objections questioning the correctness of the account in many particulars.   John B. McClernan, the judge then presiding in that department, referred the issues thus presented to Lewis P. Forestell, a member of the bar, as referee, with power to hear and determine them, and to report his findings of fact and conclusions of law thereon.   The referee filed his report on December 1, 1904.   He disallowed many of the items charged in the account, amounting to several thousand dollars.   Thereupon the relators, through their counsel, moved the court to "confirm" the report, and to tax the executor with the costs of the reference, presenting a memorandum of their costs and disbursements in connection with the hearing before the referee.   Counter-motions were made by the executor, asking the court to reject the report of the

referee, to make other findings in his favor, and to tax costs. The executor also served his notice of intention to move for a new trial. These steps were all taken by the parties in interest during the early days of December, 1904.

On January 2, 1905, George M. Bourquin and Michael Donlan, having theretofore at the general election of 1904 been elected, respectively, to the office of judge in Silver Bow county, qualified and entered upon the discharge of their duties in the other two departments of the court, under the rules theretofore in force, John B. McClernan succeeding himself, and presiding in department 3. This condition of affairs continued until February 8th, when the three judges adopted new rules, distributing the business of the district court among the departments, and assigning. the judges to different departments. Under these rules, all probate business was assigned to department 3, where it was then pending, together with all criminal cases and other cognate proceedings. The other business was divided between the other two departments. The judges were assigned: John B. McClernan, to department 1; George M. Bourquin, to department 2; and Michael Donlan, to department 3. In the meantime no disposition had been made of the report of the referee upon the account in the Nissler estate, and the motions pending with reference to it.

On February 17th, on motion of the executor, the. hearing on the report of the referee was set down for the following day, Saturday being the day fixed, under the rules, for hearing probate matters. The relators appeared and moved the court to vacate the order setting the hearing on the ground that Judge Donlan had not jurisdiction to proceed with it, by reason of the fact that John B. McClernan, upon the distribution of the matters pending in court, had reserved for hearing and determination by himself all matters connected with the settlement of the executor's account. At this time no order had been made in any of the departments touching this alleged reservation by Judge McClernan. Judge Donlan overruled the motion and proceeded with the hearing. During the noon recess

Judge McClernan made and entered an order in department 1 reserving the hearing to that department, notwithstanding the rules assigned all probate business to department 3. This was done without consultation with either of the other judges. When the court reconvened, Judge Donlan declined to regard this order as binding. Further hearing on the matter of the account was then postponed to February 25th. When the time to proceed arrived, the hearing was again postponed to March 4th.

In the meantime the relators filed in department 3 an affidavit, under the provisions of section 180 of the Code of Civil Procedure, as amended by the Act of the Second Extraordinary Session of the Eighth Legislative Assembly (Laws 1903, 2d Ex. Sess., p. 9), alleging that Judge Donlan was disqualified to proceed with the hearing by reason of his bias and prejudice in the matter, and asking that he proceed no further with it, but transfer the administration to some other district judge. Judge Donlan declined to relinquish jurisdiction, and refused to make the order transferring the administration. He announced that he would proceed because he was of the opinion that the Act under which the affidavit of disqualification was filed had no application to probate proceedings. Thereupon application was made to this court for a writ to stay Judge Donlan from proceeding further.

*Mr. Miles Cavanaugh* and *Mr. Charles Mattison,* for Relator.

*Mr. W. M. Bickford* and *Mr. George F. Shelton,* for Respondents.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Much was said during the argument in this court as to whether, under the rules adopted by the judges for the apportionment of business and the assignment of judges, Judge McClernan had authority to make the order reserving to his department the determination of the controversy over the execu-

tor's account.    The contention was made by relators that since
by virtue of the order of reference, the report of the referee
was made to Judge McClernan, for this reason he, sitting in
department 1, had jurisdiction of the matter, notwithstanding
the rules.    Counsel for respondents contend that, inasmuch
as the administration proceedings were pending in department
3 at the time the rules were adopted and promulgated, under
which such business was assigned to department 3, it properly
belonged there, and that Judge Donlan was exercising proper
jurisdiction in proceeding to hear and determine them.

There is nothing in the record to indicate that at the time
the rules were promulgated, and the apportionment of busi-
ness made, any exception or reservation was discussed with the
other judges or made by Judge McClernan in any manner
whatever.    Apparently the rules were deemed final, for the
time being, and to distribute all business then pending in the
court.    While the judges exercising their duties in their re-
spective departments must, for some purposes, be regarded as
presiding over different courts, yet the court is in fact one
court, and has jurisdiction of all matters which may properly
be brought before it.    The assignment of this or that portion
of the business to one department still leaves it pending in the
district court, so that jurisdiction is not in any sense of the
word, lost by the fact that it may have theretofore been pend-
ing in another department or before another judge.    If a
cause or proceeding pending in any department is in such con-
dition that another judge than the one who regularly presides
there may be called in to assume jurisdiction and dispose of
it, then such business might likewise be transferred from that
department to another, and the judge who presides in the lat-
ter would have the same power to proceed with it as would the
judge in the department from which the particular matter was
transferred.

Rules regulating the distribution of business under the con-
ditions prevailing in that court are a necessity, and could
hardly be dispensed with, for by no other means could un-

seemly conflicts of authority among the judges be avoided, and causes and proceedings before the court be conducted and disposed of in an orderly manner. When once adopted, under the limitations prescribed by law (section 111, Code of Civil Procedure), they become binding upon the court and litigants, for they have the force of statutes within the limitations of their application (18 Ency. of Pl. & Pr. 1262), and should be enforced, except when the court, for good cause shown, in a particular case, may relax them in order that justice may be done. (*State ex rel. King* v. *District Court,* 25 Mont. 202, 64 Pac. 352; *M. O. P. Co.* v. *B. & M. etc. Min. Co.,* 27 Mont. 288, 70 Pac. 1114; *Martin* v. *De Loge,* 15 Mont. 343, 39 Pac. 312.)

Ostensibly, the rules promulgated by the judges on February 8th were in full force, and no reason appears why they should have been disregarded. But even in the absence of rules, after the business has been distributed by an order of court concurred in by all the judges, such order should be held binding until revoked or modified by the same authority which made it. In this way only may an unseemly conflict of authority be avoided. But this is somewhat of a digression.

The particular ground of the present application is that Judge Donlan lost jurisdiction because of the filing of the affidavit imputing bias and prejudice by reason of which the relators could not have a fair trial of the issues presented by the motion or of any matter in the course of the administration.

Two questions, therefore, arise for decision: (1) Does section 180, as amended, apply to probate proceedings? And (2) Was the affidavit filed in time to disqualify Judge Donlan from proceeding to a conclusion of the particular matter under consideration?

The contention is made by respondents that the amended section has no application to probate proceedings. This view is based upon the fact that the Probate Practice Act contains a specific provision declaring the disqualifications of district judges in probate matters (section 2530, Title XII, Article IX, Chapter III, as amended by the Act of 1897, Laws 1897, p. 244),

which, it is said, is exclusive, since that same title also declares (section 2920) that, "except as otherwise provided in this Title, the provisions of Part II of this Code are applicable to and constitute the rules of practice in the proceedings mentioned in this Title." It is argued that these provisions, by mention of Part II, thereby exclude the notion that Part I has any application, and, of course, that since section 180, as amended by the Act of 1903, is found in Part I, it can have no application. This argument involves the assumption that the four Codes and their various Parts and Titles are separate and independent Acts, each dealing with a particular subject matter, and that the provisions of a particular Part or Title have nothing to do with any other Part or Title, unless it be so expressly declared in the one or the other. This view cannot be sustained. For the purpose of convenience, the enactments of the legislature were compiled by the commission in separate Codes, Parts, Titles, Articles and Chapters; but all were intended to be taken together as a whole, constituting a complete, consistent, and harmonious system.

The Code of Civil Procedure was intended to be a complete system of practice and procedure, and to apply to every character of action or proceeding which might be brought in any court, and, except where special provisions are made in the particular Part or Title, the general provisions of Part II relating to civil actions apply, in so far as they are suitable. Where they cannot apply, and specific provisions are not made, then the courts are to be governed by the practice and procedure at common law, for the common law is the rule of decision in this state, except in so far as it is repugnant to the Constitution of the United States and of this state, or of the provisions of these Codes. (Political Code, sec. 5162.)

Doubtless section 2920, *supra,* was enacted for the purpose of fixing definitely the practice and procedure in probate proceedings, so far as possible, to carry out this idea, and set at rest any doubt that might otherwise exist as to the rules of practice and procedure applicable. This view is sustained by

section 5161 of the Political Code, which declares that the provisions of the four Codes, except as provided in sections 5162 and 5163, are to be construed as if they had all been passed at the same moment, and were all parts of the same statute. These latter two sections lay down the rule of construction to be applied to conflicting provisions of the different Titles and Chapters, as do sections 5164 and 5165 with reference to similar conflicts in the provisions of the different Articles and sections.

Speaking, generally, Part I of the Code of Civil Procedure (sections 1-440) contains provisions necessary to constitute the courts, and defines the incidental powers of the courts and judges under the Constitution. It provides for terms of courts. It likewise defines the qualifications of jurors, and provides for the mode of selecting, drawing, and summoning them. It provides for the use of a seal by courts of record. It defines the qualifications necessary to enable one to be admitted to practice law in the courts of this state, lays down rules to regulate the conduct of attorneys and counselors, and provides for their removal from office when they have been adjudged guilty of conduct which renders them unworthy of confidence. This part of the Code therefore has to do with every phase of the administration of justice and the adjustment of the rights of parties, whether in actions *eo nomine* or in special proceedings, civil or criminal, as defined in Part V. To say that it does not apply to probate proceedings is to say that, without express provision of law, probate proceedings— one species of special proceedings—are to be put into a class by themselves, and that we must look exclusively to the Title containing provisions with reference to them for the instrumentalities by which the rights of those interested must be determined. If this were true, then there would be no provision for terms of court applicable; no mode for selecting, drawing, and impaneling jurors, nor means for the regulation of the conduct of attorneys, nor authority for the use of a seal. Indeed, since this Part has to do with the constitution of courts,

so far as they may be constituted by statutory authority, there would be no instrumentalities for conducting probate matters, for none are provided for in the Title of the Code making special provisions with reference to them.

Section 180, as amended, therefore, must apply to all proceedings provided for in the Code of Civil Procedure, unless a special provision is found in some part of it in conflict with that section, or the nature of the proceeding does not permit such application. Nor is section 2530, *supra,* either as first enacted or as amended (Session Laws 1897, p. 244), in conflict with any provision contained therein. Such additional disqualifications as are declared in the Act of 1897 are to be regarded as merely cumulative in character, and not exclusive.

It is true that this court has construed amended section 180 as not applicable to contempt proceedings, though they are provided for in the Code of Civil Procedure. (*State ex rel. B. & M. etc. Min. Co.* v. *Clancy,* 30 Mont. 193, 76 Pac. 10.) This construction was based upon the theory that contempt proceedings are criminal in character, that the original section did not apply to them, and that the amended section does not apply in the absence of an express declaration to that effect. There is nothing in that case in conflict with the views here expressed, for, although probate proceedings are special and statutory in their character, they must be classed among proceedings of a civil nature. The same reason for excepting them also from the application of the statute does not, therefore, exist. Besides, the Act itself, in terms, applies to all proceedings of a civil nature, as well as to actions in the stricter sense.

Was the affidavit filed in time to disqualify Judge Donlan from hearing the motion upon settling the account? It will be noticed that amended section 180 contemplates that once a judge has been found to be disqualified in an action or proceeding, he must not thereafter sit in it at any stage of it. Such is the effect, also, of section 2530, as amended by the Act of 1897 with reference to probate proceedings. The latter sec-

tion declares that the judge, *whenever* any of the grounds of disqualification are made to appear of record, shall thereafter call in another judge, who shall from time to time preside in the place of the disqualified judge. This implies that any of the disqualifications enumerated may be made to appear at any time. Section 180, however, declares that the particular disqualification of imputed bias and prejudice shall be made to appear by affidavit filed at any time before the day fixed for the trial or hearing. A hearing includes the trial—a hearing on a motion or in a proceeding of any other character. The words "action" and "proceeding," of course, include all steps to be taken in an action or proceeding, for a motion is but a step in a case, or proceeding in a case; but, whether the use of the word "motion" broadens the application of the statute or not, the intention is clearly manifested that the affidavit is not to be regarded as effective to interrupt a hearing after the arrival of the day fixed for that purpose, no matter whether it be a final hearing or trial, or merely a step taken in the case, involving a decision of some controverted matter. The disqualification of imputed bias and prejudice provided for in subdivision 4 of the Act is purely statutory. It does not rest upon the ascertainment of any fact, but only upon an imputation. Such being the case, and the statute being open to so much abuse, we are inclined to construe it strictly according to its express terms, and not broaden it by implication to include conditions not clearly within them.

The uncontroverted fact is that the hearing of the motions filed with reference to the report of the referee was taken up on February 18th. How far it proceeded on that day does not appear. The hearing was then postponed, to be resumed at a later date. Under these conditions, we do not think that, for the purpose of the proceeding then and now before the district court, the affidavit was filed in time, or that Judge Donlan thereby lost jurisdiction to proceed. The statute does not admit of a construction that would permit a litigant to file an affidavit of disqualification after the day for hearing has arrived, and thus rob the court or judge of the power to proceed.

It is questionable, upon the facts appearing in the record before us, whether there was any controversy before the court for trial, except such as arose upon the motion to tax costs. The power of the referee under the order of court seems to have contemplated the report of a final decree settling the account in accordance with the findings of fact and conclusions of law made by the referee. If such was the case, then, under the provisions of the statute (section 1140, Code of Civil Procedure), nothing was left for the court to do but to dispose of the motion to tax costs and enter the decree in accordance with the findings of the referee. (*Murphy* v. *Patterson,* 24 Mont. 575, 63 Pac. 375.) This matter, however, is not now before this court, nor do we care to express an opinion with reference to it. These remarks we make merely to avoid an inference to the effect that a trial court may disregard the findings and recommendations of a referee under the power which seems to have been given to the referee in this case.

For the reasons stated, we are of the opinion that there is no merit in this application. The alternative writ heretofore issued herein is vacated and set aside, and the proceedings dismissed.

*Dismissed.*

MR. JUSTICE MILBURN and MR. JUSTICE HOLLOWAY concur.