STATE ex rel. EDEN, Petitioner, v. DISTRICT COURT
et al., Defendants.

(No. 8,001.)

(Submitted September 30, 1939. Decided November 3, 1939.)

[95 Pac. (2d) 447.]

264

*Mr. Edward Horsky, Mr. Wellington D. Rankin* and *Mr. Arthur P. Acher,* for Petitioner, submitted an original and a reply brief; *Mr. Horsky* and *Mr. Wm. F. Schallenberger* argued the cause orally.

*Mr. John F. McGough, Mr. H. L. Maury* and *Mr. A. G. Shone,* for Respondents, submitted a brief; *Mr. Maury* argued the cause orally.

HONORABLE FRANK P. LEIPER, District Judge, sitting with consent of both parties, delivered the opinion of the court.

The petitioner, Carl F. Eden, here seeks a writ restraining the defendant district judge from proceeding with the trial of the cause wherein Frank Cassels is plaintiff and Andrew O'Connell and A. Grorud are defendants, now pending and at issue in the District Court of Jefferson County, Montana. The petitioner intervened in the district court action. An alternative writ issued. The defendants are represented here by counsel for the plaintiff in the district court action and appeared by motion to quash and by answer. A somewhat lengthy recital

of the facts is essential here to a proper understanding of the issues involved.

The district court action was commenced September 7, 1934. The Hon. Henry G. Rodgers was and is the presiding judge within Jefferson County. On June 28, 1937, Judge Rodgers was disqualified for imputed bias by the plaintiff. Thereafter Judge Rodgers duly designated Judge Jeremiah J. Lynch to hear such cause. Judge Lynch assumed jurisdiction thereof, and on January 14, 1938, the petitioner herein filed an affidavit disqualifying Judge Lynch for imputed bias. *On July 25, 1938,* an order was duly made designating Judge Albert Besancon to hear such cause. *On July 14, 1939,* the petitioner herein filed with the clerk of the district court of Jefferson County an affidavit in due form, seeking thereby to disqualify Judge Besancon.

An alternative writ of supervisory control was issued on July 18, 1939, and Judge Besancon enjoined from proceeding with the trial of that cause pending the hearing of this petition. The petitioner asserts that Judge Besancon will, unless restrained by an order of this court, proceed with the trial in the district court action. The petition alleges, in part: "That your Petitioner is informed and believes, and so alleges, that said Hon. Albert Besancon contends that said disqualifying affidavit was filed too late; that your Petitioner alleges and avers that he and his counsel *of record* [emphasis ours] were never notified by the Clerk of said District Court that said Hon. Albert Besancon had assumed jurisdiction in said cause, and accordingly your Petitioner alleges upon information and belief that said affidavit was timely filed; that the only notices which your Petitioner's attorney *of record* [emphasis ours] ever received in respect to said matter are hereunto annexed, marked 'Exhibit B, C, D and I.'"

The petition further alleges that, after the order designating Judge Besancon to hear the district court cause, "thereupon said Judge Albert Besancon did not make or enter any order in said cause to the effect that he assumed jurisdiction therein at any time or at all; that the Clerk of the District Court

of said Jefferson County did not at any time, or at all, notify your Petitioner or his attorneys *of record* [emphasis ours] in said action that said Judge Besancon had assumed jurisdiction therein.''

This brings us to the crux of this controversy. Counsel for ▮ petitioner contend that when one judge is disqualified and another called in, the latter must, before he acquires jurisdiction, file in the office of the clerk of the district court of the county where the cause is pending, a declaration or an order, in writing, declaring that he has and does assume jurisdiction; and further, that before the time mentioned in the statute (three days) begins to run, not only must such declaration be filed by the district judge but the clerk of the district court must, subsequent to the filing of such order, notify counsel *of record* that the district judge so designated has assumed jurisdiction.

Counsel assert that no such declaration or order was filed by Judge Besancon; that no notice was given by the clerk of court to petitioner or to his counsel *of record*; and that, therefore, the running of the statute had not commenced at the time of the filing of the affidavit of disqualification on July 14, 1939.

Section 8868, Revised Codes of 1935, so far as material here, provides: '' * * * and upon the second or any subsequent disqualification of a judge in the cause, a district judge of another judicial district of the state must be called in to preside in such action, motion, or proceeding, or the action, motion, or proceeding transferred to a district judge of another judicial district of the state; *when another judge has assumed jurisdiction* of an action, motion, or proceeding, the clerk of the district court in which the same was pending, shall at once notify the parties or their attorneys of record in the same, either personally or by registered mail, of the name of the judge called in, or to whom such action, motion, or proceeding was transferred. Such second or subsequent affidavit of disqualification shall be filed with the clerk of the district court in which such action, motion or proceeding may be pending within three days after the party or his attorney of record, filing such affidavit,

*has received notice as to the judge assuming jurisdiction of such action, motion, or proceeding."*

Judge Besancon's position is that he did on July 28, 1938, assume jurisdiction of the district court action; that counsel for petitioner had notice thereof; that he is unacquainted with any of the parties to this action; that he has never known or met any of them; that he has no knowledge concerning the cause except that which he has gathered from reading the pleadings therein, and also except what information was given to him by Wellington D. Rankin, Esq., in telephone conversations between the district judge and Rankin; that he believes the affidavit of July 14, 1939, was filed too late, and that if he does not proceed with the trial of the district court action, he will render himself subject to an action or proceeding compelling him so to do.

The answer herein discloses that on July 25, 1938, the clerk of the district court advised Judge Besancon by registered mail that he had been called in to try the district court action; that on July 28, 1938, Judge Besancon wrote the clerk of court as follows:

"I have your registered mail of the 25th stating that I have been called in to try the case of Frank Cassels vs. Andrew O'Connell et al., pending in Jefferson County. *I hereby assume jurisdiction of that action and will make further orders relative to the trial as soon as I obtain the necessary information.* (Emphasis ours.)

"Kindly write me stating what this case is about, and also the various lawyers and the parties they appear for, with of course the address of the lawyers; and also advise me if the case is at issue."

That on July 30, 1938, the clerk of the district court by letter, advised Judge Besancon as follows: "The case is at issue and the attorneys appearing for the plaintiff, Mr. Cassels are Mr. H. L. Maury of Butte, Montana and Mr. John F. McGough of Boulder, Montana. The attorney appearing for the intervenor, Mr. Carl F. Eden is Mr. Wellington D. Rankin of Helena, Montana."

Section 8868, supra, is silent as to the manner in which the district judge shall evidence his assumption of jurisdiction when called in. We hold that a formal order in that respect is not required and that his letter of July 28, 1938, to the clerk of the district court, was sufficient, and that Judge Besancon thereby assumed jurisdiction of the district court action.

It will be noted that the petitioner here does not say that he had no notice of the calling in of Judge Besancon, or the assumption of jurisdiction by that judge. Neither does the petitioner say that his attorney of record, Mr. Horsky, had no such notice; but the complaint is that no such notice was given to the petitioner or his attorney of record, Mr. Horsky, *by the clerk of the district court.*

Whether Mr. Rankin's name appeared of record as one of the attorneys for the petitioner herein or not, the clerk of court seems to have been laboring under the impression that it did so appear, and the clerk so advised Judge Besancon, and the clerk gave Mr. Rankin notice of the calling in of the judge and of the setting of the case for trial. In any event, the fact is that Mr. Rankin was, at the time Judge Besancon was called in to hear this case, ever since has been, and now is one of the attorneys representing this petitioner. Therefore his act, within the scope of his authority, is the act of this petitioner.

"A party may appear in person or by attorney; but, when he appears by attorney, the latter while acting as such, has control and management of the case, and his sayings and doings in the presence of the court concerning the trial of the cause are the same as though said and done by the party himself." (*Coonan* v. *Loewenthal,* 129 Cal. 197, 61 Pac. 940, 941; *State* v. *Turlock,* 76 Mont. 549, 248 Pac. 169.)

The purpose of the notice mentioned in section 8868, supra, is to advise the litigant or his counsel that a certain district judge has been called in; that that judge has assumed jurisdiction, and thus the litigant is afforded the privilege of disqualifying that judge. The thing of vital importance is—not who conveyed the information, not how was the information con-

veyed—but rather was that information in fact conveyed to the litigant (in this case the petitioner here) or to his counsel.

On July 25, 1938, the clerk of the district court notified Wellington D. Rankin, by letter, as follows: "I wish to advise you that Hon. Jeremiah J. Lynch, presiding over this Court in the absence of Hon. Henry G. Rodgers made an order this day calling in Hon. Albert Besancon, one of the Judges of the Fourth Judicial District of Montana to hear and determine all matters that have or may arise in said cause."

The record here discloses that the cause was at issue at the time Judge Besancon was called in, and that counsel for the plaintiff was seeking to have it set down for trial. Attached to the petition are copies of several letters from Mr. Maury addressed to Judge Besancon, and also letters from Judge Besancon to Mr. Maury, about setting the case for trial. On August 6, 1938, Mr. Maury wrote Judge Besancon asking that the case be set down for trial on August 22, 1938. Copy of that letter was sent to and received by Mr. Rankin. On August 9th of that year Judge Besancon replied to Maury's letter of the 6th, saying, among other things:

"Have yours of the 6th re. Cassels v. O'Connell et al., pending in Jefferson County. *I have written the clerk assuming jurisdiction in that case and note from the statement of the clerk and your letter that the case is at issue and ready for trial.* (Emphasis ours.)

" * * * I could set the *Boulder Case* on the morning of August 26th if that will suit your convenience and that of the other lawyers. Kindly let me hear from you about this.

"*Copy of this letter is being mailed to Mr. Rankin and wish he would inform me if the 26th is agreeable to himself and the lawyers associated with him.*" (Emphasis ours.)

The petition herein recites that Mr. Rankin received a copy of that letter and thereby, on or about August 9, 1938, Mr. Rankin had actual notice that Judge Besancon had assumed jurisdiction in the district court action.

Wherein lies the insufficiency of the notice given Mr. Rankin by Judge Besancon? Counsel say, in effect, that there are

therein two defects—first, that the notice should have come from the clerk of court and not from the judge; and second, that such notice should have been given to Horsky and not to Rankin. But if the notice had come from the clerk of court and not from the judge, and if it had been given to Mr. Horsky instead of to Mr. Rankin, would the purpose of the statute have been any better served? Would the information thus conveyed have been any more effective? Would the privilege given by the statute to the petitioner have been better preserved? What right has the petitoner lost by the method pursued, which would have been preserved if the method suggested by counsel had been followed? The notice given to Mr. Rankin by the judge contains all of the information required by the statute. Every purpose of the statute has been thereby fully served—every right given to the petitioner preserved. To hold otherwise is to regard form at the expense of substance, and further, to place this court's stamp of approval upon that which amounts to a subterfuge.

In his verified answer Judge Besancon says that Wellington D. Rankin told such judge: ''That he was an attorney for Eden in this cause and previous to August 9, 1938, Wellington D. Rankin called the defendant Judge on the Long Distance telephone and told the defendant Judge that he was the attorney for Carl F. Eden, the intervenor.''

On October 22, 1938, Judge Besancon wrote to Mr. Maury in part as follows: ''Re Cassels vs. Eden et al. in Jefferson County, now have your letter of the 21st. I was willing to set this case and dispose of it in September or October but was notified it was in process of settlement and did not know anything to the contrary until receipt of your letter. * * * I suggest that above case be set on November 21st or 22nd and if that is agreeable to you and the other attorneys will set it at that time. * * * Mr. Rankin called me about this case when it first came up so am enclosing copy of this letter to him and take it he will notify the other attorneys associated with him.''

Mr. Horsky received a copy of this letter. On October 21, 1938, Mr. Maury wrote Judge Besancon about the district court cause suggesting dates for its trial. Copy of this letter was

sent to Mr. Horsky. At the same time Mr. Maury wrote Mr. Horsky about the setting of this cause for trial and sent a copy of that letter to Judge Besancon. On May 6, 1939, Judge Besancon wrote to Mr. Maury about the setting of this case, sending a copy thereof to Mr. Rankin, Mr. Horsky, and Mr. McGough. On May 29, 1939, further correspondence occurred concerning the setting of this case, copies of which were sent to and received by Mr. Horsky.

The district judge, in his answer, further says: "That on another occasion shortly previous to October 22, 1938, or on that day, Wellington D. Rankin called the said defendant Judge by Long Distance telephone and on another occasion soon after the defendant Judge had assumed jurisdiction at least within one month after the defendant Judge assumed jurisdiction and when the defendant Judge was communicating with all the lawyers therein relative to an appropriate date for trial, Wellington D. Rankin telephoned the Judge by Long Distance and went into considerable detail regarding the fact that the case was in process of settlement and that if the defendant Judge could only hold off setting it for trial for two or three weeks that it would very likely be settled and again about October 21, 1938, after the defendant Judge had suggested the period of November 21st to 23rd, 1938, for trial of the cause, Wellington D. Rankin again called the defendant Judge by telephone and again urged that it be not set for trial as the case would very likely be settled out of court."

These allegations of the answer are not denied.

From the foregoing it will be seen that Mr. Rankin recognized Judge Besancon as the judge before whom the cause was pending and who had jurisdiction over it, and attempted to dissuade Judge Besancon from setting the cause for trial for the reason that a settlement was pending.

On July 3, 1939, an order was made setting the district court case down for trial to be tried on July 20th, and the clerk of the district court gave notice thereof to Wellington D. Rankin, as well as to the other counsel in the case. On July 14, 1939, the affidavit of disqualification in question was filed.

This court has repeatedly passed upon the provisions of section 8868, supra, both before and since its amendment.

In the case of *State of Montana ex rel. Carl Eden* v. *Schneider,* 102 Mont. 286, 57 Pac. (2d) 783, 786, this court says: "Like the peremptory challenge of a juror, this disqualification is waived if not exercised at the proper time. (*Washoe Copper Co.* v. *Hickey,* 46 Mont. 363, 128 Pac. 584; *State ex rel. Jacobs* v. *District Court,* 48 Mont. 410, 138 Pac. 1091.) And, while the right thus to disqualify a judge for imputed bias cannot be abridged merely because it is subject to abuse (*State ex rel Carleton* v. *District Court,* 33 Mont. 138, 82 Pac. 789, 8 Ann. Cas. 752; *State ex rel. Carroll* v. *District Court,* 50 Mont. 506, 148 Pac. 312), owing to the fact that it is purely statutory and 'open to so much abuse,' this court has heretofore construed it strictly according to its express terms, and has refused to 'broaden it by implication to include conditions not clearly within them.' (*State ex rel. Nissler* v. *Donlan, Judge,* 32 Mont. 256, 80 Pac. 244, 247.)"

In the *Washoe Copper Co. Case* above, this court says: " 'Any one may waive the advantage of a law intended solely for his benefit. But a law established for a public reason cannot be contravened by a private agreement.' [Sec. 8742, Rev. Codes, 1935.] There is not anything peculiar about the provisions of subdivision 4 above. They merely grant privileges which may be accepted or waived. They are waived (1) by the failure to file a disqualifying affidavit, or (2) by failure to file in time. These considerations are sufficient to show that it was not the intention of the legislature to inject into these provisions any question of public policy, and this is emphasized by the further provision limiting the number of challenges to five. Subdivision 4 confers advantages solely for the benefit of the litigant, and such advantages may be waived, and in this instance they were waived, * * * ".

Under the facts in this case we hold that this petitioner waived his right to file a disqualifying affidavit against Judge Besancon, and that the affidavit filed on July 14, 1939, is of no avail because untimely.

Some contention is made by counsel for petitioner to the effect that the three-day provision of section 8868 is unconstitutional; but counsel have not pointed out what particular part or portion of either the Constitution of the State of Montana or that of the United States is thereby violated. We shall, therefore, give no further consideration to that phase of this matter except to remark, in passing, that the legislature, if it sees fit so to do, might repeal the whole of the section in question without violating any part of either the state or federal Constitution.

Counsel for petitioner, in oral argument, suggests, in substance, that no district judge should sit in any case where a question has been raised as to his bias or prejudice; that he ought to step aside, even without the filing of a disqualifying affidavit, when suggestion is made requesting that he so do. With that statement we cannot agree. A district judge has assumed the performance of the duties of that office. One of those duties is to hear causes over which he has jurisdiction and to do so without delay. It is his duty to see to it that all matters coming before him are disposed of as promptly as may be and without any unnecessary delay. Certainly no district judge should hear any cause when he is conscious of bias or prejudice for or against any of the parties therein; but in the absence of that, the performance of his duty requires that he hear and decide each matter over which he has jurisdiction unless he is prevented from acting in the manner provided by law.

It follows that this proceeding must be and it is dismissed.

MR. CHIEF JUSTICE JOHNSON and MR. JUSTICE MORRIS concur.

MR. JUSTICE ANGSTMAN concurring specially:

I concur in the result reached in the foregoing opinion, but not in the means by which that result is attained. The opinion quotes copiously from the answer of Judge Besancon, tending to show that one of counsel for petitioner had actual notice of the fact that he, Judge Besancon, had been called in to hear the cause and was intending to do so as early as October 22, 1938,

and then proceeds to say that the allegations have not been denied. This is all true, but it is beside the point involved.

Mr. Rankin, one of counsel for petitioner, in the petition herein fairly and frankly sets forth that he had actual notice of the fact that Judge Besancon had been called in to try the case as early as July 25, 1938. The petition admits and alleges that the following letter of July 25, 1938, was received by him:

"Re: Cassels v. Eden as Intervener for Grorud.

"I wish to advise you that Hon. Jeremiah J. Lynch presiding over this Court in the absence of Hon. Henry G. Rodgers made an order this day calling in Hon. Albert Besancon, one of the Judges of the Fourth Judicial District of Montana to hear and determine all matters that have or may arise in said cause.

"Yours very truly

"(Signed) W. A. McCULLOCH,

"Clerk."

Other correspondence attached to the petition demonstrates that counsel make no claim that they had no notice or knowledge that Judge Besancon had been called in to try the case. They conceded such facts in oral argument. Their contention is that before the time for filing the affidavit of disqualification started to run under section 8868, they must have been given formal notice by the clerk of the name of the judge after he had assumed jurisdiction. As I interpret section 8868, a judge assumes jurisdiction of a cause when he permits himself to be called in in the case. That is made apparent from the fact that under that section the clerk shall notify the parties, or their counsel, "of the name of the judge called in, or to whom such action, motion, or proceeding was transferred."

Since counsel for petitioner concede that such notice was given, I think the requirements of the statute had been met to start the running of the time for further disqualifying affidavits from the time of the receipt of the notice giving the name of the judge called in to hear the case.

I attach no importance to the fact that the notice from the clerk was addressed to Wellington D. Rankin, whose name, according to the petition, has never been formally entered of rec-

ord as associate counsel, though, according to the petition, he was employed as such, rather than to Edward Horsky, the attorney of record. While the statute requires the notice to be given to the attorney of record, the petition concedes that the attorney of record also had notice that Judge Besancon had been called in to try the case, but as to him the notice did not emanate from the clerk. I agree with the majority opinion that this was immaterial.

MR. JUSTICE ERICKSON:

I agree with the above special concurring opinion of MR. JUSTICE ANGSTMAN.