STATE ex rel STEFONICK, Relator. v. DISTRICT COURT, FIFTH JUDICIAL DISTRICT, BEAVERHEAD COUNTY, ET AL, Respondents

No. 8582

Submitted February 9, 1945. Decided March 17, 1945.

157 Pac. (2d) 96

Mr. W. G. Gilbert and Messrs. Gilbert & Gilbert, all of Dillon, and Messrs. Gunn, Rasch & Gunn, of Helena, for Relator.

Messrs. Maury & Shone, of Butte, and Mr. John Collins, of Dillon, for Respondents.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

Relator, Peter Stefonick, defendant in the divorce action of Stefonick v. Stefonick, Cause No. 8572 in this court, seeks a writ to prohibit respondent district judge from hearing the plaintiff's motion therein for attorney's fees and costs on appeal.

The divorce suit was filed in the district court of Beaverhead county. The Hon. Lyman H. Bennett, district judge thereof, was disqualified by affidavit on behalf of the plaintiff. The Hon. R. E. McHugh, district judge of the Third Judicial District, was thereupon called in and assumed jurisdiction, but was disqualified by affidavit filed on behalf of the defendant, relator herein. The respondent, the Hon. C. E. Comer, a district judge of the Fourth Judicial District, was then called in to sit in the case and assumed jurisdiction in February, 1944, tried the cause in April, and in September, after briefs had been duly filed, rendered a decree in plaintiff's favor. Relator, on September 23, 1944, perfected his appeal.

In November, 1944, plaintiff moved for an order requiring relator to pay her costs and attorney's fees on appeal. The order to show cause was served upon relator on November 29th, and on the same day an affidavit of disqualification of Judge Comer was filed on relator's behalf under the fourth subdivision of Sec. 8868, Revised Codes, infra. Thereafter in December, in spite of his attempted disqualification of Judge Comer, the relator caused the bill of exceptions in the divorce action to be presented to Judge Comer for settlement and the latter made an order settling it.

Subsequently Judge Comer set for hearing plaintiff's motion for costs and attorney's fees on appeal, which had been continued from the time originally set by the order to show cause. The motion is one of which the district court necessarily retains jurisdiction despite the appeal. (Sec. 9739, Revised Codes); Bordeaux v. Bordeaux, 29 Mont. 478, 75 Pac. 359; State ex rel Tong v. District Court, 109 Mont. 418, 96 Pac. (2d) 918; State ex rel Enochs v. District Court, 113 Mont 611, 139 Pac. (2d) 545.

Respondent judge's answer to the alternative writ issued herein expresses his personal indifference in the questions presented, but his belief that he has jurisdiction of the cause and that it is therefore his duty to proceed to hear the motion. It is urged on behalf of respondent that the attempted disqualification, which was the third in the action, came too late and that in any event it was waived by relator's presentation of the bill of exceptions to Judge Comer for settlement. On the other hand, relator contends that the disqualifying affidavit was filed in time, and that the presentation of the bill of exceptions constituted no waiver thereof because the affidavit of disqualification referred only to the motion for payment of costs and attorney's fees on appeal, and not to the action itself or to any other phase thereof. We shall discuss these questions in inverse order.

The affidavit of disqualification was filed under Sec. 8868, Revised Codes, which provides as follows:

"Any justice, judge, or justice of the peace must not sit or act as such in any action or proceeding:

"1. To which he is a party, or in which he is interested;

"2. When he is related to either party by consanguinity or affinity within the sixth degree, computed according to the rules of law;

"3. When he has been attorney or counsel for either party in the action or proceeding, or when he rendered or made the judgment, order, or decision appealed from;

"4. When either party makes and files an affidavit as hereinafter provided, that he has reason to believe, and does believe,

he cannot have a fair and impartial hearing or trial before a district judge by reason of the bias or prejudice of such judge. Such affidavit may be made by any party to an action, motion, or proceeding, personally, or by his attorney or agent, and shall be filed with the clerk of the district court in which the same may be pending at least five days before the day appointed or fixed for the hearing or trial of any such action, motion, or proceeding (providing such party shall have had notice of the hearing of such action, motion, or proceeding for at least the period of five days and in case he shall not have had notice for such length of time, he shall file such affidavit immediately upon receiving such notice). Upon the filing of the affidavit, the judge as to whom said disqualification is averred shall be without authority to act further in the action, motion, or proceeding, but the provisions of this section do not apply to the arrangement of the calendar, the regulation of the order of business, the power of transferring the action or proceeding to some other court, nor to the power of calling in another district judge to sit and act in such action or proceeding, providing that no judge shall so arrange the calendar as to defeat the purposes of this section. No more than two judges can be disqualified for bias or prejudice in said action or proceeding, at the instance of the plaintiff, and no more than two at the instance of the defendent, in said action or proceeding, and this limitation shall apply however many parties or persons in interest may be plaintiffs or defendants in such action or proceeding. If there be more than one judge in any judicial district in which said affidavit is made and filed, upon the first disqualification of a judge in the cause, another judge, residing in the judicial district wherein the affidavit is made and filed, must be called in to preside in such action, motion, or proceeding; and upon the second or any subsequent disqualification of a judge in the cause, a district judge of another judicial district of the state must be called in to preside in such action, motion, or proceeding, or the action, motion, or proceeding transferred to a district judge of another judicial district

of the state; when another judge has assumed jurisdiction of an action, motion, or proceeding, the clerk of the district court in which the same was pending, shall at once notify the parties or their attorneys of record in the same, either personally or by registered mail, of the name of the judge called in, or to whom such action, motion, or proceeding was transferred. Such second or subsequent affidavit of disqualification shall be filed with the clerk of the district court in which such action, motion, or proceeding may be pending within three days after the party or his attorney of record, filing such affidavit, has received notice as to the judge assuming jurisdiction of such action, motion, or proceeding.''

Until 1903 the statute included only the first three subdivisions, which relate to actual disqualifications, but in that year subdivision 4 was added to provide disqualification for what has been termed ''imputed bias or prejudice.'' Acts 1903, 2d Ex. Sess., c. 3. As originally enacted it allowed each party five such disqualifications and required only that the affidavit be filed ''at any time before the day appointed or fixed for the hearing or trial.'' There have been two amendments of the subdivision, the chief effects of which were (1) to reduce the number of disqualifications from five to two for each party, (2) to require that the affidavits be filed ''at least five days before the day appointed or fixed for the hearing or trial,'' (3) to provide for notice to the parties, when another judge has assumed jurisdiction, and (4) to require that ''such second or subsequent affidavit of disqualification shall be filed with the clerk * * * within three days after'' the receipt of notice ''as to the judge assuming jurisdiction.''

The first question here is whether the disqualifying affidavit, if effective, disqualified Judge Comer from acting or sitting in only the motion for attorney's fees and costs on appeal, so that he could still act in other matters connected with the action, such as the settling of the bill of exceptions. Relator contends that the disqualifying affidavit had that effect because it stated only that affiant believed that relator could not

have "a fair and impartial hearing or trial of said order to show cause or the said application for order to show cause by reason of bias and prejudice" of the judge. It is not clear how a judge's bias and prejudice could be such as to deny the litigant a fair and impartial hearing of one step in an action without affecting other steps also. However, it is unnecessary to consider that question, since the statute does not make it possible to disqualify judges in particular portions of a cause or proceeding, as distinguished from the whole thereof, so as to parcel out the jurisdiction concurrently among two or more trial judges.

Sec. 8868 does not permit of a construction which could result in so chaotic a situation. It provides that the judge "must not sit or act as such in any action or proceeding" in which the affidavit is filed as provided by subsection 4. That subsection provides moreover that upon the filing of an affidavit the judge shall have only the powers of arranging the calendar, regulating the order of business and "transferring the action or proceeding to some other court" or "calling in another district judge to sit and act in such action or proceeding." It is clear that the disqualification goes to the entire action or proceeding.

The first reference to "motion" in the section was the procedural provision in subsection 4 that the affidavit may be filed "at any time before the day appointed or fixed for the hearing or trial of any such action, motion or proceeding." The obvious purpose of the clause was to prevent affidavits of disqualification from being filed on the day of a hearing and perhaps at the actual hearing itself; in other words, to prevent postponements and delays and not "to add delays, nor to secure postponements which are not deserved." State ex rel Jacobs v. District Court, 48 Mont. 410, 138 Pac. 1091, 1093. But if the word "motion" had not been inserted that purpose would have been largely defeated, and if the requirement were only that the affidavit of disqualification might be filed at any time before the hearing or trial of the action or proceeding itself, such affidavits could be filed so as to delay the hearing of all pre-

liminary matters, of which there are ordinarily a number in each action or proceeding. Thus only a small part of the desired result would have been accomplished and judges, parties and counsel might have been harassed and justice delayed at every step except the actual trial of the action or proceeding. This was especially true when, as originally enacted, the subsection granted each party five such disqualifications. That in the opinion of the legislature the provisions still led to too much delay is evidence by the amendment in 1909, Laws 1909. c. 114, to reduce the permitted disqualifications to two for each party, and by the further amendment in 1927, Laws 1927, c 93, to require the affidavits to be filed at least five days before the day set for hearing, and to require that notices be given of another judge's assumption of jurisdiction and that subsequent disqualifying affidavits must be filed within three days after notice thereof.

There can be no doubt that the legislative purpose in inserting the word "motion" in the first procedural clause was to make the provision fully, rather than fractionally, effective; and having required that the affidavit be filed before the day set for hearing or trial of action, motion or proceeding, it was only natural to add that upon such filing the judge should be "without authority to act further in the action, motion, or proceeding." But that the effect of the affidavit of disqualifition was not limited to the motion alone is shown by the fact that no words were used to effect such limitation, that the word "motion" was not added to the substantive provision at the beginning of the section, upon which subdivision 4 depends, that the judge must not thereafter sit or act in the action or proceeding, and that the only exceptions to that absolute disqualification were of the powers to arrange the calendar, to regulate the order of business, and to transfer the action or proceeding to some other court or to call in another judge to sit in the action or proceeding.

When the procedural provisions were amended in 1909 to provide that if there is another judge of the same district he

must be called before a judge is brought in from another district it was perhaps only natural to follow the wording of the first procedural clause and mention motions as well as actions and proceedings. The same is true as to the further procedural amendment of 1927 requiring notice to be given when another judge has been called in, and requiring any subsequent disqualifying affidavit to be filed within three days after notice thereof. But upon neither amendment of the procedural provisions was there any limitation of the above substantive provision at the beginning of the section, terminating the judge's authority to sit and act in the action or proceeding, or of the reservation of the authority to transfer the entire action or proceeding to another court or to call in another judge to sit in the entire action or proceeding.

The fact that the disqualification necessarily goes to the entire action or proceeding has been recognized by this court from the beginning. Within sixteen months after the subsection was added as amendment to Sec. 180, Code of Civil Procedure 1895, this court said in State ex rel Nissler v. Donlan, 32 Mont. 256, 80 Pac. 244, 247, speaking through Mr. Chief Justice Brantly, "it will be noticed that amended Sec. 180 contemplates that, once a judge has been found to be disqualified in an action or proceeding, he must not thereafter sit in it at any stage of it."

Again, less than two years after subsection 4 was enacted, this court recognized that the purpose was not to permit the disqualification of judges with reference to motions only, but to make more effective the disqualification for the entire action or proceeding. In State ex rel. Carleton v. District Court, 33 Mont. 138, 82 Pac. 789, 791, 8 Ann. Cas. 752, this court said:

"The word 'motion' seems to have been inserted purposely, to indicate that it was the intention of the legislature to allow the litigant to work the disqualification at any time before the time for trial on the merits, and, further, at any time before a hearing on a motion in the progress of the case which involves a final adjudication of the rights of the parties upon that partic-

ular branch of the case. To illustrate: That it might be filed at any time before the hearing of a demurrer or motion to strike, or motion for judgment on the pleadings, or trial on the merits, or a hearing on motion for a new trial, or a motion to set aside a default, or the like, but not in any of these instances on the day of the hearing or during its progress. It would seem to follow necessarily that motions made during the progress of any of these hearings are therefore excluded, because a hearing upon the merits, or upon a motion, includes all the motions or other steps which may necessarily be made in order to present the questions involving the rights of the parties during the progress of such hearing. This construction must be given to the fourth subdivision of Sec. 180, or else the term 'motion,' as used therein, has no significance whatever. \* \* \*

"While the disqualification of imputed bias and prejudice may not be invoked during a hearing, because the limitations embodied in the amendment to Sec. 180 render it impossible, yet the disqualification may be worked, as specifically provided, at any time before the day of hearing upon any one of the separate steps to be taken in the progress of the case. This would include, of course, a motion for a new trial."

It has repeatedly been held that the effect of the affidavit, if filed in time, is to deprive the judge of any further authority to act in the action or proceeding except as expressly provided by Sec. 8868, a number of those decisions coming after the amendments of the procedural provisions of the section (State ex rel. Perry v. District Court, 83 Mont. 377, 272 Pac. 553; Russell v. Sunburst Refining Company, 83 Mont. 452, 272 Pac. 998; Pincus v. Davis, 95 Mont. 375, 26 Pac. (2d) 986). Indeed no other interpretation of the section is possible. It is immaterial, therefore, that the affidavit of disqualification mentioned only the motion. If it was effective at all, Judge Comer was thereby disqualified in the entire action and in all matters connected therewith.

Respondent's argument that any effect of the affidavit of disqualification was waived by relator's presentation of

the bill of exceptions to Judge Comer for settlement and the latter's act in settling it, cannot be sustained. It is not necessary to consider whether such waiver of a prior disqualification is ever possible, for the presentation of the bill of exceptions for settlement by an unauthorized person is obviously a nullity and can have no effect for any purpose. Appeals to this court are subject to "such regulations and limitations as may be prescribed by law." Montana Constitution, Art. VIII, Sec. 2.

The legislature has provided that a judge may settle and sign a bill of exceptions after he ceases to become a judge, but that if he "dies, is removed from office, becomes disqualified, is absent from the state, or refuses to settle the bill of exceptions, or if no mode is provided by law for the settlement of the same, it shall be settled and certified in such manner as the supreme court may, by its order or rules, direct." Sec. 9393, Revised Codes. In short, it is only when a judge ceases to become a judge otherwise than by death or removal from office that he can still settle the bill of exceptions in a cause tried by him, and not when for some reason he continues to be a judge but is disqualified to act. As this court pointed out in State ex rel. Carleton v. District Court, supra, a judge may, during the progress of the litigation, become disqualified under the various provisions of Sec. 8868.

This court has by rule (Rule VII) provided for the settlement of bills of exceptions "in case any judge of the district court shall fail or refuse, upon proper presentation or request, to allow, settle or certify an exception or bill of exceptions or statement of the case." But it has not heretofore expressly provided by rule for such settlement in the other events mentioned, and in this instance no application was made to this court for an order providing for the mode of settlement of the bill of exceptions, as provided by Sec. 9393. It follows that if the attempted disqualification of Judge Comer was effective, the presentation of the bill of exceptions to him for settlement, and its settlement by him, were nullities. They cannot, there-

fore, have revested Judge Comer with jurisdiction or have constituted a waiver of his disqualification.

It is suggested that the provision of Sec. 9393 for settlement of bills of exceptions if the judge "becomes disqualified" does not refer to disqualifications under subdivision 4 of Sec. 8868 because that subdivision was not enacted until later. But Sec. 8868, with the other three subdivisions relating to the disqualification of judges, had been adopted in 1871, twenty-four years prior to the enactment of Sec. 9393, and the latter necessarily includes any disqualifications then or thereafter provided by law. It is not possible to limit its application to certain kinds of disqualification, for the legislature has not limited it in any way. Nor is it possible to interpret "disqualified" as meaning physically incapacitated, for, as applied to judges, the word "disqualified" has acquired a definite and technical meaning and must according to reason and statute (Sec. 15, Revised Codes), be construed accordingly. Certainly the various forms of the verb "disqualify" as applied to judges should not be construed otherwise than as this ocurt has already construed them in the above-cited decisions and in dozens of others.

But if their meaning in Sec. 9393 could be more narrowly construed, there is still no authority for the judge, however his disqualification arose, to settle a bill of exceptions in an action in which Sec. 8868 declares that he has no further authority to act.

The final question is whether the affidavit was filed in time. As noted above, Sec. 8868 provides that when another judge has assumed jurisdiction the clerk shall give the parties notice "of the name of the judge called in" and that "such second or subsequent affidavit of disqualification shall be filed with the clerk * * * within three days" after receipt of notice. This is the third affidavit of disqualification in the action. It was not filed within three days after relator's receipt of notice that Judge Comer had been called in and had assumed jurisdiction; for the judge had been called in and had assumed jurisdiction some nine months before, had presided at the trial, and had

rendered the decree. Relator contends, however, that as the affidavit of disqualification was filed on the day on which the order to show cause was served upon him, it was within three days after receipt of notice that Judge Comer had assumed "jurisdiction of the motion." But Judge Comer was not "called in" to hear the motion. He was called in and assumed jurisdiction long before that time to hear the entire action, including any and all motions connected therewith. The issuance, in November, of the order to show cause was not a notice of his assumption of jurisdiction, but of a hearing to be held upon a matter of which he already had jurisdiction by virtue of what had been done during the preceding March.

Relator relies upon the statement in State ex rel. Carleton v. District Court, supra, that the disqualification by affidavit may be worked, as specifically provided, before any one of the separate steps to be taken in the progress of the case, including a motion made after final judgment. The statement was true when made in 1905, and it is still true; but in 1927 the statute was amended so as specifically to provide that the second or subsequent affidavit of disqualification must be filed within three days after notice as to the judge assuming jurisdiction of the action, motion or proceeding. It is not correct to speak of the judge's assuming jurisdiction of a motion since the statute provides that he is called in "to sit and act in such action or proceeding," whether or not a motion is the first matter he is called upon to hear; and the inclusion of the word "motion" in this procedural clause cannot alter that fact. As this court said in the same case, in the statement quoted below, a change of judge upon a motion transfers the action, just as a change of judge or a change of place of trial upon the trial or hearing of the action on the merits transfers the action. In either case it is the action or proceeding of which the one judge loses and the other assumes jurisdiction.

Relator relies also upon the statement in State ex rel. Carleton v. District Court, supra, that "a motion for a new trial is pro hac vice a proceeding independent of the trial of the case

on the merits," and suggests therefore that the attempted disqualification is not the third but only the first. But the court went on to say: "Of course, the latter part of Sec. 180, limiting the number of disqualifications upon the ground of bias and prejudice, must be construed to mean the number of disqualifications that may be had during the controversy on the ground of bias and prejudice at any stage of it, because a change of place of trial or a change of judge upon a motion transfers the action just the same as a change of judge or a change of a place of trial upon the trial or hearing of the cause or proceeding on the merits transfers the cause, and no matter at what stage of it, the transfer is made, the particular transfer must be counted as one of the five permitted to each party by the statute." Since the disqualification upon a motion for a new trial is to be considered as one of those granted to the parties for the entire action as a whole, the same is necessarily true of the disqualification upon the motion for costs and attorney's fees on appeal. It must be true also that the requirement that "such second or subsequent affidavit of disqualification" must be filed within three days after receipt of notice of the new judge's assumption of jurisdiction, likewise refers to the second or subsequent affidavit filed in the entire proceeding, for the rights given the parties to file disqualifying affidavits are not granted or limited with reference to separate motions, but only with reference to the action or proceeding as a whole.

It is interesting, however, to consider how, if the motion were an entirely separate matter from the cause on its merits so that separate disqualifications could apply to it, Judge Comer ever acquired jurisdiction over it. The motion, like the cause itself, was filed in the court of the Fifth Judicial District for Beaverhead county, over which Judge Bennett, and not Judge Comer, presides. How has the latter acquired jurisdiction of the motion, unless through the order by Judge Bennett calling him to sit and act in the divorce action itself? The answer, of course, is as shown in the statement last above quoted from the Carle-

ton decision. The effect of the disqualification of one judge and the calling in of the new judge and the assumption of jurisdiction by him is to transfer the entire action, and everything connected therewith, from the one judge to the other. If, however, Judge Comer had just been called in and had first assumed jurisdiction by the issuance of the order to show cause upon the motion for attorney's fees and costs on appeal, the disqualifying affidavit would have been in time and relator would have been entitled to the writ sought.

As noted above, Sec. 8868, as amended by the addition in 1903 of subdivision 4, provides that a judge "must not sit or act as such in any action or proceeding * * * when either party makes and files an affidavit as hereinafter provided," that he believes he cannot have a fair and impartial hearing by reason of the judge's bias or prejudice. Throughout the period of more than forty years since the addition of that subdivision, this court has consistently, and necessarily, held that the right thereby for the first time conferred upon litigants by the legislature is purely statutory and is waived if not exercised as therein provided. There is no necessity to cite the long succession of decisions to that effect. One such decision is State ex rel. Eden v. District Court, 109 Mont. 263, 95 Pac. (2d) 447. Since in this case the affidavit was not filed within the time set by the statute, it was of no effect. The writ prayed for is therefore denied.

Associate Justices Adair and Cheadle concur.

Mr. Justice Angstman (dissenting):

I dissent. I am not able to agree with the result reached by the majority. I agree that under the practice in Montana a judge who is disqualified in one step of an action is without jurisdiction to act further in the action except as the statute permits. There are but two questions in the case. First, was the affidavit disqualifying Judge Comer timely? And, second, how is the question affected by the fact that Judge Comer signed the bill of exceptions after the filing of the affidavit of disqualification?

The case of State ex rel. Carleton v. District Court, 33 Mont. 138, 82 Pac. 789, 8 Ann. Cas. 752, made it clear that a party to an action, motion or proceeding may disqualify a judge for imputed bias at any one of the separate steps in the progress of a case. That case was followed in the later case of State ex rel. Working v. District Court, 50 Mont. 435, 147 Pac. 614.

The amendments made to the statute, which is now Sec. 8868, since the decision of the Carleton case do not change the statute in respect to the point that a disqualifying affidavit may be filed in any "action, motion, or proceeding" and upon any one of the separate steps therein. The statute as it now stands provides in part that, "when another judge has assumed jurisdiction of an action, motion, or proceeding, the clerk of the district court in which the same was pending, shall at once notify the parties or their attorneys of record in the same, either personally or by registered mail, of the name of the judge called in, or to whom such action, motion, or proceeding was transferred. Such second or subsequent affidavit of disqualification shall be filed with the clerk of the district court in which such action, motion or proceeding may be pending within three days after the party or his attorney of record, filing such affidavit, has received notice as to the judge assuming jurisdiction of such action, motion, or proceeding."

The above-quoted language was added to the statute since the decision in the Carleton case but there was no change in the statute so far as it gave the right to disqualify a judge in any "action, motion, or proceeding." It must thus be assumed that the legislature was satisfied with the interpretation in the Carleton case to the effect that the right to disqualify goes to each separate step in an action or proceeding. The right to disqualify a judge is a substantial right. State ex rel. Carroll v. District Court, 50 Mont. 506, 148 Pac. 312. The statutes should receive a liberal construction with a view to effect their objects, Sec. 4, Revised Codes. To construe the statute as do the majority, so as to cut off the right of disqualification for some subsequent step in the action before it is known that such a step will

arise in the case and before the party learns of the bias of the judge is not a liberal interpretation. Gugler v. Ind. Acc. Fund, 157 Pac. (2d) 89. I think liberally construed it must be said that the affidavit filed on the very day when relator was served with a copy of the application and order, and which in this case was more than five days before the same was set for hearing, was timely.

Sec. 8868 must be read in conjunction with Sec. 9098, which deals with the question of changing the place of trial and which before amendment was considered in the Carleton case as Sec. 615. That section provides for a change of place of trial when a judge is disqualified. So far as material it provides: "The court or judge must, on motion, change the place of trial in the following cases: * * * 4. When, from any cause, the judge is disqualified from acting; but * * * if any qualified district judge shall be called in and shall, within thirty days after the motion is made, appear and assume jurisdiction of the cause and of all matters and proceedings therein, no change of the place of trial shall be made. If such judge shall so appear he shall be vested with, and shall exercise, in said cause, all the authority of the judge of the district in which said action or proceeding may be pending." In legal effect when a judge is called in to assume jurisdiction of a cause, without changing the place of trial, the judge so called in steps into the shoes of the local judge. He has no greater rights than the local judge, nor does he acquire any more permanent status in the case than the local judge. If either party has not exhausted his right to disqualify two judges, he may disqualify such judge, on some subsequent and independent motion arising after the judge has assumed and exercised jurisdiction over some other phase of the action. Had the action been transferred to Missoula instead of Judge Comer going from Missoula to Dillon to try the case, I think a party could use the right of disqualification after trial and on a subsequent motion as here, and I think the same conclusion follows where the case is not transferred but a judge is called in. The affidavit was timely filed as against the second or subsequent judge

when it was filed at least five days before the day appointed or fixed for the hearing of such separate motion or proceeding arising after the trial of the action on its merits, as here. There is nothing in the case of State ex rel. Eden v. District Court, 109 Mont. 263, 95 Pac. (2d) 447, that militates against this view. That case did not involve a separate step or proceeding arising after trial of the action on its merits.

I do not find any language in the present statute which can be held to evince a legislative purpose to change the rule of the Carleton case. By that decision a litigant could proceed to trial before the judge of the court before whom the case was filed without waiving the right to disqualify him for imputed bias at some subsequent step in the case. There is no reason for any different rule and I do not find any probihition in the statute preventing the doing of the same thing as to the second or subsequent judge in the case.

Each litigant however is limited to the right to disqualify but two judges throughout an entire action or proceeding. This was squarely held in the Carleton case, except at that time each party had the right to disqualify five judges in a case. Judge Comer, while the third judge in the case, was only the second judge attempted to be disqualified by relator.

Did the fact that relator asked Judge Comer to settle the bill of exceptions after the filing of the affidavit affect the question, and was the act of Judge Comer in signing the bill of exceptions valid? I think relator was justified in asking, and in fact compelled to ask, Judge Comer to sign the bill of exceptions and that his act in doing so was valid.

Under the statute relator was obliged to present the proposed bill for settlement "to the judge who tried or heard the case," Sec. 9390, Revised Codes. Judge Comer, it should be remembered, is the judge who tried and heard the case on its merits. "When, as here, there has been a change of judge between the time the motion for a new trial was made and the time when a hearing was had on the same, the judge who heard the motion is the only one who is in position to certify what was before

104

him and what he considered as the basis of his ruling on the motion." Russell v. Sunburst Ref. Co., 83 Mont. 452, 272 Pac. 998, 1003. And see to the same effect Pincus v. Davis, 95 Mont. 375, 26 Pac. (2d) 986. So in this case Judge Comer is the only judge who is in position to certify what took place at the trial and what was before him when he rendered judgment. The statute permits a judge to settle and sign a bill of exceptions after he ceases to be such judge. Sec. 9393, Revised Codes. The act of settling a bill of exceptions does not involve the exercise of judicial discretion, or a person who has ceased to be a judge could not be authorized to settle it. And certainly the act involved no judicial discretion where, as here, the only thing the judge had to do was to sign the bill as sent to him and where no amendments to the proposed bill were offered which required consideration.

Because of the foregoing, the act of settling the bill of exceptions does not conflict with that part of Sec. 8868 reading, "upon the filing of the affidavit, the judge as to whom said disqualification is averred shall be without authority to act further in the action, motion or proceeding."

Sec. 9393 also provides: "If such judge or judicial officer, before the bill of exceptions is settled, dies, is removed from office, becomes disqualified, is absent from the state, or refuses to settle the bill of exceptions, or if no mode is provided by law for the settlement of the same, it shall be settled and certified in such manner as the supreme court may, by its order or rules, direct." The words "becomes disqualified" did not contemplate disqualification for imputed bias because when Sec. 9393 was passed the right to disqualify a judge for imputed bias did not exist in Montana. Also I think those words were used in their natural and ordinary sense and that they have reference to some physical or mental disability incapacitating the judge from acting and that they have no reference to a disqualification resulting from the filing of an affidavit imputing bias and prejudice which has the effect merely of depriving the judge of jurisdiction over a particular matter. This is made

apparent by consideration of the entire section which permits a judge to settle the bill after he has ceased to be judge, which indicates that a loss of jurisdiction is not the kind of disqualification contemplated by section 9393 as making it necessary to resort to this court for direction as to the mode of settling the bill of exceptions. The case of In re Thompson's Estate, 72 Utah 17, 269 Pac. 103, 128, considered the question as to what was meant by a constitutional provision authorizing the judge of the supreme court to call in a district judge when a justice shall be disqualified. It said: "We think the term is used in its natural and ordinary sense, and thus includes illness or a physical disability or other condition incapacitating a member of the court." See, also, Thomlinson Riley Co. v. Feinberg & Kahn, 220 Ill. App. 442.

I think that a judge who has been disqualified by imputed bias from hearing a separate motion arising subsequent to the trial of a case on its merits has jurisdiction and power to settle the bill of exceptions, and that when asked to do so by a party who has theretofore filed an affidavit of disqualification against him, such party has not waived his right to stand upon his disqualifying affidavit.

I think the writ applied for should issue.

Mr. Justice Morris:

I concur in the dissenting opinion of Mr. Justice Angstman.