IN RE WOODSIDE-FLORENCE IRR. DIST.
No. 8727.
Submitted October 22, 1947. Decided May 6, 1948.
194 Pac. (2d) 241.

348

Mr. W. T. Boone and Mr. Edward T. Dussault, both of Missoula, and Messrs. O'Hara, Madeen & MacDonald, of Hamilton, for appellants. Oral arguments were presented by Mr. Boone and Mr. Dussault.

Messrs. Pope & Smith, of Missoula, Messrs. Koch & Brownlee, of Hamilton, and Mr. C. J. Dousman, of Helena, for respondent. Oral arguments were presented by Mr. Walter Pope, Mr. E. Gardner Brownlee and Mr. Dousman.

MR. CHIEF JUSTICE ADAIR delivered the opinion of the court.

This is an appeal from an order made by the Honorable Albert Besancon, a judge of the district court of the fourth judicial district of the state of Montana in and for the county

of Ravalli, establishing the Woodside-Florence Irrigation District wherein are included appellants' lands.

The irrigation district includes approximately 15,000 acres of land in the Bitterroot valley lying to the west of the Bitterroot river. The estimated cost of the project is $1,444,000.00.

The proceedings were commenced by filing in said district court a petition signed by numerous petitioners alleged to represent more than 60% in number of the holders of title or evidence of title to the particularly described lands proposed to be included in the irrigation district.

June 14, 1946, Judge Besancon made an order setting the petition for hearing for July 31, 1946, and directing the clerk to cause notice thereof to be given as provided in section 7169, Revised Codes of Montana 1935.

June 15, 1946, the clerk filed in the proceeding his certificate, with the newspaper copy of petition attached, showing that he had given notice as ordered by the court.

*Disqualification Effected.* July 25, 1946, James E. Wimett, one of the signers of the petition, swore to, subscribed and filed in said proceedings with the clerk of the court an affidavit disqualifying Judge Besancon wherein the affiant deposed: "That he is one of the petitioners in the above entitled matter and makes and files this affidavit because he has reason to believe, and does believe he cannot have a fair and impartial hearing before the Honorable Albert Besancon, Judge of the above styled District Court, by reason of the bias and prejudice of the said judge."

*Disqualification Disregarded.* The bill of exceptions herein recites that, "the matter came on regularly to be heard * * * at 10 o'clock, A. M. on Tuesday, August 6, 1946, before the Hon. Albert Besancon, Judge Presiding, sitting without a jury, upon the petition of the proponents of the District, and the various objections filed thereto."

The petitioners were represented by Walter Pope, Esq., of Missoula, Montana, and associates. The objectors were repre-

sented by Robert O'Hara, Esq., of Hamilton, Montana, and associates.

Thirty-eight named land owners opposing the creation of the district represented by Attorney O'Hara and associates appeared in the proceeding and interposed a motion to dismiss the petition for the creation of the district.

On August 6, 1946, Judge Besancon, disregarding his disqualification and assuming to sit and act in the proceeding, took his place on the bench and called the cause for trial whereupon at the commencement thereof the following proceedings were had in open court:

"Mr. O'Hara: At this time we desire to make an objection and we now object to the Hon. Albert Besancon presiding in this proceeding, for the reason that he has been disqualified by an affidavit of prejudice filed by J. E. Wimett, one of the proponents of the formation of this district. We are making this objection on behalf of those parties, clients of ours, whose names are set forth in the motion to dismiss the proceedings heretofore filed in this case. I want to say that our position is this: That you have been legally disqualified, and we do not think that you are entitled to sit in the case. We do not feel that you are prejudiced, but we are standing on the record as it has been made by the proponents of the district. Our investigation of the matter has completely convinced us that the proper affidavit was filed, and that you have no jurisdiction to try the case.

"Mr. Pope: In that connection, in line with the statement heretofore made informally on behalf of the petitioners, the record may show that, on behalf of the petitioner by whom the affidavit was filed, we move that we be permitted to withdraw the affidavit. In that connection I am speaking on behalf of the petitioners generally, and on behalf of James Wimett, whom I also represent along with the other petitioners. We ask leave to withdraw the affidavit filed on July 25th.

"Mr. O'Hara: Does that include a request that the maker of the affidavit be prosecuted for perjury?

"The Court: I note from the record that the motion to dismiss was filed here on the 30th of July. The objections you make now are on behalf of the parties named in that motion. I recall that on the 31st this matter of the affidavit of prejudice was carefully considered by the Court and the attorneys. Mr. O'Hara was present all of that time.

"Mr. O'Hara: At no time in the proceeding have I consented to anything.

"The Court: I say you were present. At that meeting on the 31st, it was tentatively agreed that the petitioners would withdraw the affidavit of prejudice filed by Mr. Wimett. So at this time the affidavit filed by J. E. Wimett is withdrawn by the petitioners, and considered withdrawn by the Court, and is out of the way in this case. As to the objections to the withdrawal, those objections are overruled, and the case may now proceed.

"Mr. O'Hara: Let the record show that we except to the ruling of the Court.

"The Court: The matters before us now are the petition, the motion to dismiss the petition, and the various petitions to withdraw lands from the district. It seems the matter now for hearing would be this motion to dismiss the petition.

"Whereupon, the court heard argument by all counsel as to the law on the question of the motion to dismiss the petition, filed on behalf of the objectors herein; and at 12 o'clock Noon, Court recessed until 1:30 o'clock P. M., at which time the following further proceedings were had :

"The Court: The motion to dismiss this petition, by Albert Sestak and others, presented by W. T. Boone and O'Hara, Madeen & MacDonald, is in all things denied.

"Mr. O'Hara: May we have an exception to the ruling of the Court?

"The Court: Certainly."

Thereafter evidence was adduced and Judge Besancon assumed to make an order establishing the irrigation district wherein, over appellants' objections, their lands were included.

Appellants assign six specifications of error. The first three specifications present the question: Did Judge Besancon have jurisdiction to sit or act as judge in the trial of this cause?

*Jurisdiction.* The word "jurisdiction" is derived from the ██ Latin "juris dicto," "I speak by the law." The jurisdiction of a court is in a broad sense its power to hear and determine controversies and in a more restricted sense its power to adjudicate a particular case. It is not within the power of litigants to invest a court with any jurisdiction or power not conferred on it by law. Accordingly consent cannot cure jurisdictional defects resulting from the determination of matters by a person, judge or tribunal not qualified or empowered to preside or perform judicial acts. See 21 C. J. S., Courts, sec. 85, pages 127-131.

The Wimett affidavit, filed in time, is sufficient in substance and form to meet all the requirements of our Fair Trial Law, subd. 4 of sec. 8868, Rev. Codes.

The mere filing of the affidavit ipso facto worked the dis-
[3] qualification of the district judge against whom it was directed. State ex rel. Lohman v. District Court, 49 Mont. 247, 249, 141 Pac. 659; State ex rel. Durand v. District Court, 30 Mont. 547, 77 Pac. 318; Washoe Copper Co. v. Hickey, 46 Mont. 363, 365, 128 Pac. 584; State ex rel. Goodman v. District Court, 46 Mont. 492, 494, 128 Pac. 913; State ex rel. Anaconda Copper Mining Co. v. Clancy, Judge, 30 Mont. 529, 542, 77 Pac. 312; State ex rel. Grogan v. District Court, 44 Mont. 72, 75, 119 Pac. 174; State ex rel. Coleman v. District Court, 120 Mont. 372, 186 Pac. (2d) 91; State ex rel. Ballard v. Jefferson Circuit Court, 225 Indiana 174, 73 N. E. (2d) 489.

"Upon the filing of the affidavit, the judge as to whom said disqualification is averred shall be without authority to act further in the action, motion, or proceeding." Subd. 4, sec. 8868.

When the affidavit is filed in the cause the judge so challenged "must not sit or act as such" in that particular action or proceeding. Sec. 8868.

Upon the filing of the affidavit the authority of the chal-

lenged judge to act in the cause is expressly limited to the doing of the purely ministerial acts of arranging the calendar, regulating the order of business, calling in another judge or transferring the cause, if a transfer is proper. Subd. 4, sec. 8868; Rowan v. Gazette Printing Co., 69 Mont. 170, 220 Pac. 1104; State ex rel. Moser v. District Court, 116 Mont. 305, 314, 151 Pac. (2d) 1002; State ex rel. Goodman v. District Court, supra; State ex rel. Working v. District Court, 50 Mont. 435, 439, 147 Pac. 614; state ex rel. Sherman v. District Court, 51 Mont. 220, 152 Pac. 32; State ex rel. First Trust & Savings Bank of Billings v. District Court, 50 Mont. 259, 261, 146 Pac. 539; State ex rel. Nissler v. Donlan, 32 Mont. 256, 80 Pac. 244; State ex rel. Stefonick v. District Court, 117 Mont. 86, 157 Pac. (2d) 96; State ex rel. Ballard v. Jefferson Circuit Court, supra.

If there be more than one judge in the district, the one first disqualified in a given case must call in another judge of the same district. Sec. 8868; Rowan v. Gazette Printing Co., supra.

If all the judges of a district are disqualified in a given case, a judge of another district must be called in to preside in the action. Sec. 8868; Rowan v. Gazette Printing Co., supra.

No more than two judges can be disqualified for imputed bias or prejudice by plaintiffs and no more than two by defendants. Sec. 8868.

The above limitation on disqualifications apply regardless of the number of plaintiffs or defendants in the action or proceeding. Sec. 8868.

It is the policy of our system that no judge should be allowed to sit when he is laboring under bias or prejudice toward one or more of the parties litigant. State ex rel. Carleton v. District Court, 33 Mont. 138, 82 Pac. 789, 8 Ann. Cas. 752.

The imputation in the affidavit may be in the language of the statute and proof of facts showing actual bias and prejudice is neither required nor permitted. State ex rel. Grogan v. District Court, 44 Mont. 72, 75, 119 Pac. 174; State

ex rel. Nissler v. Donlan, supra; State ex rel. Coleman v. District Court, supra.

The disqualification provided for in subdivision 4 of section 8868 stands upon the same level of importance as do those provided for in the preceding three subdivisions of the statute, except as to the time when the imputation may be made, and operates as effectively if invoked at the proper .time. State ex rel. Carleton v. District Court, supra; State ex rel. Moser v. District Court, supra.

Thus does the Fair Trial Law (Subd. 4, sec. 8868) provide a speedy, efficient and dignified means of enabling a litigant to have a change of judges on account of prejudice or believed prejudice of the judge without undue embarrassment to anyone and without having to assign his reasons or being compelled to offer proof in support of the averments of his disqualifying affidavits. State ex rel. Anaconda Copper Mining Co. v. Clancy, Judge, supra; State ex rel. Carleton v. District Court, supra; Davis et ux. v. Irwin et ux., 65 Idaho 77, 139 Pac. (2d) 474, 478.

The Fair Trial Law was enacted to divest jurisdiction—not to confer it and such law contains no provision permitting any recall, retraction or ''withdrawal'' of the disqualifying affidavit after its filing. The law commands that upon the disqualification another judge ''must be called in to preside in such action, motion, or proceeding.'' Subd. 4, sec. 8868. In construing such statute the judges may not insert therein any ''withdrawal'' provision. Sec. 10519, Rev. Codes 1935.

The statute expressly states what a judge may do after the filing of a disqualifying affidavit and he is precluded from doing any other things. The rule *Expressio unius est exclusio alterius* applies.

This court has heretofore construed the statute strictly in accordance to its express terms, and has refused to broaden it by implication to include conditions not clearly within the statute. State ex rel. Eden v. Schneider, 102 Mont. 286, 292, 57 Pac. (2d) 783; State ex rel. Nissler v. Donlan, Judge, supra.

*Waiver.* The waiver of the right to disqualify a judge is one thing. The waiver of the disqualification itself is an entirely different matter.

The right to disqualify the judge is waived by failure to exercise the right. This waiver may be by action or non-action before the actual disqualification of the judge is accomplished. By non-action when no affidavit is filed or when not filed in time. By action where upon an agreement based upon consideration the right to file the affidavit is waived either expressly or impliedly, as in the Washoe Copper Co. case, supra. But after the right to disqualify has been exercised and disqualification effected and jurisdiction lost, then it is beyond the power of one or a part of the litigants, over the protests and objections of the others, to waive the disqualification or restore the jurisdiction lost. Here the appellants did not consent to waive the disqualification of Judge Besancon but expressly refused to do so. Whatever loose language appears in cases decided under statutes of other states, it is plain that under mandatory language of our statute, the judge "must not sit or act" in the proceeding after being disqualified. The disqualification once accomplished may not be waived by the mere act of "withdrawal" of the affidavit. The disqualification extends to the entire cause, not merely to the litigant filing the affidavit therein.

In 48 C. J. S., Judges, sec. 95, page 1100, it is said: "The disqualification of a judge cannot be waived if it is grounded in public policy or is based on an absolute constitutional or statutory prohibition against a disqualified judge sitting in the case." Here we have an absolute statutory prohibition against a disqualified judge sitting in the case. He "must not sit or act." Sec. 8868. In the face of such absolute prohibition one or more of the various litigants may not, over the timely objections of other litigants, "withdraw" a proper and timely affidavit so as to restore jurisdiction in the disqualified judge "to sit or act as such" in the action or proceeding.

The law is as set forth in the well considered case of Watson v. Payne, 94 Vt. 299, 111 A. 462, 463, wherein it is said:

"But where it is expressly declared by constitutional or statutory provision that in certain specified cases a judge shall not sit, or shall not act, or shall take no part in the decision, the authorities are almost uniform to the effect that any judgment rendered by such judge in such case is coram non judice and void. Bates v. Thompson et al., 2 D. Chip., Vt., 96; Hill v. Wait, 5 Vt., 124; Richardson v. Welcome, 6 Cush., Mass., 331; Sigourney v. Sibley, 21 Pick., Mass., 101, 32 Am. Dec. 248; Gay v. Minot, 3 Cush., Mass., 352; Hall v. Thayer, 105 Mass. 219, 7 Am. Rep. 513; Oakley v. Aspinwall, 3 N. Y. 547; People v. Whitridge, 144 App. Div. 493, 129 N. Y. S. 300; People v. Connor, 142 N. Y. 130, 36 N. E. 807; McIntosh v. Bowers, 143 Wis. 74, 126 N. W. 548; Case v. Hoffman, 100 Wis. 314, 72 N. W. 390, 74 N. W. 220; 75 N. W. 945, 44 L. R. A. 728; Horton v. Howard, 79 Mich. 642, 44 N. W. 1112, 19 Am. St. Rep. 198; Seabrook v. First National Bank, Tex. Civ. App., 171 S. W. 247; Lee v British-American Mortg. Co., 51 Tex. Civ. App. 272, 115 S. W. 320; Gulf, C. & S. F. Ry. Co. v. Looney, 42 Tex. Civ. App. 234, 95 S. W. 691; Fechheimer v. Washington, 77 Ind. 366; Freeman on Judgments, par. 146.

"Such judgment is therefore incapable of being made good by confirmation, waiver, or ratification on the part of those interested. See cases cited above, because, where no jurisdiction exists by law, it cannot be conferred by consent or waiver, especially against the prohibition of a law which was not designed merely for the protection of the parties to a suit, but for the general interest of justice.

"The same rule has been applied when the disqualified judge has acted simply as one of a bench composed of several judges, even though his vote was not necessary to a decision. Oakley v. Aspinwall, supra; Converse v. McArthur, 17 Barb., N. Y., 410; Reg. v. Justices, 6 Q. B. 753; Id., 18 Q. B. 416; People v. Bork, 96 N. Y. 188. The reason stated in Oakley v. Aspinwall is that—

" 'Whatever a party may consent to do, the state cannot afford to yield up its judiciary to such attack and criticism as will inevitably follow upon their decisions made in disregard of the prohibitions of the law.'

"This rule seems to us to be founded upon reason and justice, and in fact to be the only safe rule to follow."

Litigants and their counsel and agents should ponder well their contemplated act before filing the affidavit which instantly energizes the drastic and far reaching provisions of the Fair Trial Law and ipso facto permanently divests the judge as to whom the disqualification is averred of all "authority to act further in the action, motion, or proceedings." Sec. 8868. Those invoking the aid of the statute should exercise their right and privilege cautiously and for the purpose intended by the act. They will not be permitted to play fast and loose with either the law, the judge or the other litigants in the cause, nor may they employ the provisions of the Fair Trial Law as an instrument to dicker or bargain with or to threaten, soften, condition, intimidate, control or influence the future conduct, rulings or decision of the trial judge in the action or proceeding.

When once the disqualifying affidavit is filed it passes beyond the control of the affiant and becomes a part of the record in the proceeding affecting not only the authority and power of the judge against whom it is directed but also affecting the rights of all the litigants for it instantly and permanently removes from the proceeding one of the limited number of judges who may be disqualified by either side under subdivision 4 of section 8868. There are numerous petitioners in this particular action, yet no more than two judges can be disqualified for imputed bias at their instance, the statute providing "this limitation shall apply however many parties or persons in interest may be plaintiffs or defendants in such action or proceeding." Sec. 8868. It follows therefore that when the petitioner Wimett made and filed the affidavit against Judge Besancon he exercised a right which the law provides for the use and

benefit of any party to the proceeding and the disqualification so effected inured not only to the advantage of Wimett but it inured to the benefit of every party to the proceeding who believed he could not have a fair and impartial trial and hearing before said judge. The exercise by the affiant Wimett of the right to disqualify the designated judge made it wholly unnecessary for any other party, believing as he did, to file such an affidavit whereas, had Wimett not filed the affidavit, then some other party could have exercised the right, but in either event the disqualification would have been charged against each and all the parties on one side of the controversy and would leave them but one other disqualification. Thus the right which he exercised was not intended for the sole benefit of the petitioner Wimett but it was intended for and it inured to the benefit of each and all the parties to the proceeding similarly situated. *After* the affidavit was filed each and all the numerous parties litigant had a right to rely upon the disqualification and to assume that the statute would be obeyed and that another judge would be called in to preside. *After* its filing neither Wimett nor any other party had control of the affidavit nor was counsel for petitioners, over the protests and objections of appellants, authorized to speak for appellants or to waive for them any benefits that came to them through the filing of the affidavit and the removal of the particular judge from the proceeding.

Upon the filing of the disqualifying affidavit Judge Besancon was commanded, by express law, to call upon the Honorable C. E. Comer, the other district judge of the fourth judicial district, to preside in the proceeding. The disqualified judge not only failed to make an order calling in Judge Comer but he disregarded the disqualification and assumed to exercise jurisdiction which he did not have by assuming to continue to sit and act as a judge and to preside as such at the trial of the cause. The law does not tolerate such disregard of its prohibitions, and such disobedience to its plain mandate.

In the trial the Honorable Albert Besancon was not a judge

but merely a usurper and the proceedings before him were coram non judice and void. Watson v. Payne, supra. "Every act of a court beyond its jurisdiction is void." Ex parte Reed, 100 U. S. 13, 23, 25 L. Ed. 538.

Accordingly, the order appealed from is set aside, vacated and held for naught as null and void. The disqualified judge is directed to call in Judge Comer to preside in the proceedings and it is further directed that the disqualified judge must not act further in the action, motion or proceeding than is expressly provided for in and allowed by the provisions of subdivision 4 of section 8868, Revised Codes of Montana, 1935.

The cause is remanded to the district court for further proceedings not inconsistent with this opinion.

Associate Justices Choate and Gibson concur.

THE HON. BENJAMIN E. BERG, DISTRICT JUDGE, (sitting in place of Mr. Justice Metcalf, disqualified, dissenting:

I agree with the elementary principles of law stated in the majority opinion, but do not agree that they are applicable to the question before the court, or that the authorities cited support the conclusions reached, namely, that a party filing a disqualifying affidavit under the provisions of subsection 4 of section 8868, Revised Codes of Montana 1935, may not waive the disqualification and by withdrawal of the affidavit remove the disqualification.

The opinion is predicated upon the assumption that the question involved is one of jurisdiction and cannot be waived. At the outset the opinion quotes and cites authorities supporting the well established rule of law that if a court has no jurisdiction of the action or subject matter such jurisdiction cannot be conferred by consent, agreement or conduct of the parties. This general rule of law, to which there can be no dispute, and the cases cited to support it, relate to the court as a tribunal, and not to the personnel that may from time to time preside in the court. This distinction was clearly recognized in the case of In re Weston, 28 Mont. 207, 72 Pac. 512, 513, where the court had under consideration the disqualification of

a judge for imputed bias, under an act of the Eighth Legislative Assembly of Montana, designated as "Substitute for Senate Bill No. 71." There the court said: "It is manifest from the terms employed that the act does not purport to affect the district court—does not intend to disarrange the judicial machinery or change the place of trial, which can only be effected by a change of venue—but seeks merely to change the personnel of the presiding officer. The act is aimed at the individual, not at the constituent part of the lower court, for a change of judge would not change the court. For all judicial purposes it would remain the same after the change as before. Hedrick v. Hedrick, 28 Ind. 291."

Jurisdiction must be either of the subject matter, or of the person. The extent of the former is to be determined by the law of the sovereignty; the latter is a question of fact. As to the jurisdiction of the person, although a party defendant be not within the jurisdiction of the court, he may waive the advantage and does so if he appears generally in the action and pleads to the complaint, Merchants' Heat & Light Co. v. James B. Clow & Sons, 204 U. S. 286, 27 S. Ct. 285, 51 L. Ed. 488.

In the case of Hobbs v. German-American Doctors, 14 Okl. 236, 78 Pac. 356, 357, the court said, as to a defendant within the jurisdiction of the court: "The law provides the manner by which the plaintiff may have the defendant brought into court, and without his consent, subjected to the jurisdiction and power of the court to bind him by its orders and judgments. But these provisions are for the benefit of the defendant, and he may waive them or insist on them, as suits his convenience."

In the matter of jurisdiction the law is clear that while the court's jurisdiction over an action or subject matter cannot be conferred by consent, jurisdiction of the person can be conferred by consent or conduct. In the latter instance the court follows the general rule that where a privilege is personal and does not concern public policy, it may be waived.

While there are some exceptions, it is also the general well

established rule that where, for specific existing causes enumerated in the statute, a judge is disqualified to preside in any action or proceeding, the right of a judge so disqualified to preside cannot be either expressly or impliedly waived. Oakley v. Aspinwall, 3 N. Y. 547; People v. Whitridge, 144 App. Div. 493, 129 N. Y. S. 300; Sigourney v. Sibley, 21 Pick., Mass., 101, 32 Am. Dec. 248; Horton v. Howard, 79 Mich. 642, 44 N. W. 1112, 19 Am. St. Rep. 198; Chambers v. Hodges, 23 Tex. 104; City of Dallas v. Peacock, 89 Tex. 58, 33 S. W. 220; Gaer v. Bank of Baker, 111 Mont. 204, 107 Pac. (2d) 877.

While there is some conflict in the decisions, the same general rule applies where for reasons of public policy, for example, where one or more of the parties are related to the judge or where he is personally interested in the outcome of the litigation, a judge is disqualified, the disqualification cannot be waived either expressly or impliedly. Lindsley v. Lindsley, Tex. Civ. App. 152 S. W. (2d) 415; State ex rel. Richardson v. Keen, 185, Okl. 539, 95 Pac. (2d) 120; State v. Ledbetter, 156 Okl. 23, 9 Pac. (2d) 728; Kline v. State, 194 Ind. 334, 142 N. E. 713; Washoe Copper Co. v. Hickey, 46 Mont. 363, 128 Pac. 584.

In all jurisdictions where the right to disqualify a judge is the personal privilege of a party to litigation, as distinguished from the disqualification of a judge by operation of law or public policy, it is uniformly held that the privilege may be waived. Washoe Copper Co. v. Hickey, supra; State v. Ham, 24 S. D. 639, 124 N. W. 955, Ann. Cases 1912A, 1070; State ex rel. Lebeck v. Chavez, 45 N. M. 161, 113 Pac. (2d) 179; Burns v. Burns, 27 Ohio Cir. Ct. R. 149; Kline v. State, supra; State ex rel. Richardson v. Keen, supra; People v. Whitridge, supra. In the last cited case, which involves the disqualification of a judge by reason of his interest in the case, the court said [144 App. Div. 493, 129 N. Y. S. 302] : "Such an interest goes to the very jurisdiction of the judge to sit as such, and, while parties in civil actions may by stipulation waive any right which is personal to themselves, they cannot by consent con-

fer jurisdiction to act as a judge upon one whom the statute says shall have no such jurisdiction.''

Section 8868, Revised Codes of Montana 1935, provides as follows:

''Any justice, judge or justice of the peace must not sit or act as such in any action or proceeding:

''1. To which he is a party, or in which he is interested;

''2. When he is related to either party by consanguinity or affinity within the sixth degree, computed according to the rules of law;

''3. When he has been attorney or counsel for either party in the action or proceeding, or when he rendered or made the judgment, order, or decision appealed from;

''4. When either party makes and files an affidavit as hereinafter provided, that he has reason to believe, and does believe, he cannot have a fair and impartial hearing or trial before a district judge by reason of the bias or prejudice of such judge. Such affidavit may be made by any party to an action, motion, or proceeding, personally, or by his attorney or agent, and shall be filed with the clerk of the district court in which the same may be pending at least five days before the day appointed or fixed for the hearing or trial of any such action, motion, or proceeding (providing such party shall have had notice of the hearing of such action, motion, or proceeding for at least the period of five days and in case he shall not have had notice for such length of time, he shall file such affidavit immediately upon receiving such notice). Upon the filing of the affidavit, the judge as to whom said disqualification is averred shall be without authority to act further in the action, motion, or proceeding, but the provisions of this section do not apply to the arrangement of the calendar, the regulation of the order of business, the power of transferring the action or proceeding to some other court, nor to the power of calling in another district judge to sit and act in such action or proceeding, providing that no judge shall so arrange the calendar as to defeat the purposes of this section. No more than two judges

can be disqualified for bias or prejudice, in said action or proceeding, at the instance of the plaintiff, and no more than two at the instance of the defendant, in said action or proceeding, and this limitation shall apply however many parties or persons in interest may be plaintiffs or defendants in such action or proceeding. If there be more than one judge in any judicial district in which said affidavit is made and filed, upon the first disqualification of a judge in the cause, another judge, residing in the judicial district wherein the affidavit is made and filed, must be called in to preside in such action, motion, or proceeding; and upon the second or any subsequent disqualification of a judge in the cause, a district judge of another judicial district of the state must be called in to preside in such action, motion, or proceeding, or the action, motion, or proceeding transferred to a district judge of another judicial district of the state; when another judge has assumed jurisdiction of an action, motion, or proceeding, the clerk of the district court in which the same was pending, shall at once notify the parties or their attorneys of record in the same, either personally or by registered mail, of the name of the judge called in, or to whom such action, motion, or proceeding was transferred. Such second or subsequent affidavit of disqualification shall be filed with the clerk of the district court in which such action, motion, or proceeding may be pending within three days after the party or his attorney of record, filing such affidavit, has received notice as to the judge assuming jurisdiction of such action, motion, or proceeding.''

As stated in the majority opinion, under the decisions of the Montana Supreme Court the filing of the affidavit of imputed bias under subsection 4 of section 8868 within the time therein specified ipso facto disqualifies the presiding judge, and he is without authority to act further in the action, motion, or proceeding. As stated in the majority opinion, the privilege conferred by subsection 4 may be waived, but they hold that the waiver can only be made before the timely exercise of the privilege. There is no sound reason why the privilege cannot

be waived after its exercise as well as before exercise, if done before another judge has been called in and has appeared and consented to preside in the action.

The all-important difference between subdivision 4 and subdivisions 1, 2 and 3 of section 8868, supra, is that subdivision 4 does not by any of its terms disqualify a judge from presiding in any cause as a matter of law. On the contrary, the disqualification is made to depend upon the election of any party to the action or proceeding of his personal privilege to file his affidavit imputing bias and prejudice to the judge and stating therein his belief that he cannot have a fair and impartial trial before the judge. Whether the judge is in fact biased or prejudiced is immaterial. It is the belief of the litigant that he cannot have a fair trial and his election to invoke and the invoking of the privilege to file the affidavit of imputed bias and prejudice that give effect to subdivision 4. As stated in Washoe Copper Co. v. Hickey, supra [46 Mont. 363, 128 Pac. 586] : ''It is not the bias or prejudice which works his disqualification, but the mere filing of the affidavit in time, even though the judge against whom it is aimed be entirely free from either charge.''

In several decisions this court has recognized the distinction between a disqualification of a judge by virtue of the law as expressed in subdivisions 1, 2 and 3 of section 8868, supra, and of a disqualification through the exercise of the privilege conferred by subdivision 4 of that section.

In Gaer v. Bank of Baker, supra, this court invoked subsection 1 of section 8868, supra, and held that an order authorizing an administratrix to execute a note and mortgage to secure the payment of money borrowed by the administratrix from a bank in which the judge signing the order was a stockholder and an officer, to pay family allowance and other expenses incurred during the administration of the estate, was void and that the mortgage executed pursuant to the order was void, even though no objections were made to the right of the judge to make the order. The decision correctly holds that,

where the facts are such that the statute itself disqualifies the judge, such disqualification cannot be waived.

But this rule has no application where the statute does not of itself disqualify the judge but only confers a personal privilege to a litigant to disqualify him if he chooses to do so. The distinction between a disqualification effected by the terms of the statute itself and a disqualification brought about through the exercise of a personal privilege of a litigant was early noted by this court in State ex rel. Nissler v. Donlan, 32 Mont. 256, 80 Pac. 244, 247, where this court said:

"The latter section declares that the judge, *whenever* any of the grounds of disqualification are made to appear of record, shall thereafter call in another judge, who shall from time to time preside in the place of the disqualified judge. This implies that any of the disqualifications enumerated may be made to appear at any time. Section 180, however, declares that the particular disqualification of imputed bias and prejudice shall be made to appear by affidavit filed at any time before the day fixed for the trial or hearing. * * * The disqualification of imputed bias and prejudice provided for in subdivision 4 of the act is purely statutory. It does not rest upon the ascertainment of any fact, but only upon an imputation. Such being the case, and the statute being open to so much abuse, we are inclined to construe it strictly according to its express terms, and not broaden it by implication to include conditions not clearly within them." (Emphasis mine.)

In that case the court held the affidavit was not filed in time, and therefore ineffective, or in other words the disqualification was waived. In State ex rel. Jacobs v. District Court, 48 Mont. 410, 138 Pac. 1091, 1093, this court, speaking through Mr. Justice Sanner, said:

"Actual disqualification on the part of a judge may be manifested at any time after as well as before the date fixed for a hearing, and it is therefore available in probate proceedings whenever it is made to appear; but the *privilege* to impute bias to a judge where none may exist belongs to a different order

of things and its existence may fairly be limited to a given time.'' (Emphasis mine.)

In Washoe Copper Co. v. Hickey, supra, Judge Lynch had been disqualified for imputed bias, and thereafter counsel for both litigants agreed that Judge Stewart should be called in to preside in the case, and he was by Judge Lynch called in to preside. Thereafter one of the litigants filed an affidavit of imputed bias seeking to disqualify Judge Stewart. The affidavit was sufficient as to its contents, and filed in time. The court held that the agreement of the parties that Judge Stewart should preside in the case constituted a waiver of the right to disqualify him for imputed bias. The court said: ''There is not anything peculiar about the provisions of subdivision 4 above. They merely grant privileges which may be accepted or waived. They are waived (1) by the failure to file a disqualifying affidavit, or (2) by failure to file in time. These considerations are sufficient to show that it was not the intention of the Legislature to inject into these provisions any question of public policy. And this is emphasized by the further provision limiting the number of challenges to five. Subdivision 4 confers advantages solely for the benefit of the litigant, and such advantages may be waived, and in this instance they are waived, in a mode prescribed by law subdivision 1, section 6389, Revised Codes. For a more extended discussion of the question here considered, see State v. Ham, 24 S. D. 639, 124 N. W. 955, Ann. Cas. 1912A, 1070, where, in the elaborate and well-considered opinion, the conclusion is reached in harmony with our views as expressed above.''

It is admitted in the majority opinion that the right to disqualify a judge for imputed bias can be waived in two ways: By nonaction, where no affidavit is filed, or when not filed in time, and also where the parties agree upon a certain judge the right to file the affidavit is waived, either expressly or impliedly, as in the Washoe Copper Co. case, supra. Here, then, in view of its decision in Gaer v. Bank of Baker, supra, the court, in the majority opinion, recognizes the distinction be-

tween a disqualification effected by the statute itself as dis-tinguished from one brought about through the filing of an affidavit imputing bias and prejudice.

The majority opinion holds that once the privilege of dis-qualifying a judge for imputed bias has been properly exer-cised it cannot thereafter be waived, but the court in the Washoe Copper Co. case, supra, specifically approves the de-cision in State v. Ham, supra, and said: *"The conclusion is reached in harmony with our views as expressed above."* (Em-phasis mine.)

In the case of State v. Ham, supra, the defendant in a crim-inal case invoked the privilege of filing an affidavit that he believed he could not have a fair and impartial trial before the presiding judge. Before the presiding judge had trans-ferred the case to another circuit judge or had called in another judge to preside, defendant withdrew the affidavit. The trial proceeded as if no affidavit of prejudice had been filed, and the jury found him guilty. It was urged by the defendant that, by reason of the filing of said affidavit of prejudice, the presiding judge became forever disqualified to hear the case, and that the subsequent filing of the withdrawal paper signed by the defendant could not reinvest or clothe the judge with judicial authority to hear and try the case, and that it was not within the power of the defendant or his attorney to waive the disqualification effected by the disqualifying affidavit. The court said [24 S. D. 639, 124 N. W. 956] :

"The rule seems to be well established that any disqualifi-cation of a judge which is not forbidden by some rule of public policy, and which exists only for the benefit of the party as a privilege, may be waived. * * * The disqualification arises solely from the effect of the making and filing of the affidavit, and does not exist without such affidavit, and under such circumstances, where a defendant withdraws from record the affidavit of prejudice, as he would have a right to do, and re-quests the trial to proceed as if such affidavit had not been made and filed, he should not be heard to complain after con-

viction. * * * Appellant has cited Oakley v. Aspinwall, 3 N. Y. 547, as sustaining his contention, but in that case the disqualification existed by reason of the relationship, the consanguinity of the judge, and falls clearly within the public policy doctrine which prevents a waiver of such disqualification by consent of the parties. * * * In the case at bar no such prohibition of law enters into the question. The disqualification in this case arose only as a presumption from the act of the defendant himself making the affidavit of prejudice, which he afterwards withdrew and canceled of record, thus removing all presumption of prejudice and also removing the disqualification. So far as the record discloses, there never was any actual disqualification of the trial judge. The case of Oakley v. Aspinwall is not applicable to the circumstances of this case.''

''A waiver results * * * from a voluntary withdrawal of the affidavit of disqualification or motion for change of judge or acquiescence in disregard of such affidavit.'' 48 C. J. S., Judges, section 95, page 1102, and to the same effect is 30 Am. Jur., ''Judges,'' par. 95, page 801.

In Krebs v. Los Angeles Ry. Corp., 7 Cal. (2d) 549, 61 Pac. (2d) 931, 934, the court said: ''If it be conceded that the affidavit was filed in time, nevertheless appellants are barred from raising the question of disqualification on this appeal by reason of the fact that they voluntarily withdrew it. The affidavit was filed after the hearing on the motion for new trial on October 15. The remarks of the judge in court on October 16 indicate that while the affidavit of prejudice was pending he deemed himself without right to act on the motion for new trial. He informed counsel of the order he would make if the affidavit was withdrawn. With full knowledge of the action contemplated, which action was adverse to plaintiffs in that it required them to remit $7,500 from verdicts totaling $12,000 as a condition to denial of defendant's motion for new trial, plaintiffs consented to withdraw said affidavit, and thereby waived their right to object to said judge passing on the motion.''

In State v. Chavez, 45 N. M. 161, 113 Pac. (2d) 179, 187, the

court said: "It is obvious that disqualification for prejudice may be waived; and it is waived by implication as well as by specific acts of the party having a right to rely thereupon. See note in 5 A. L. R. 1604, citing numerous authorities. Such 'disqualification resulting from the filing of an affidavit of prejudice is waived where the affidavit is withdrawn.' 31 Am. Jur., Judges, par. 95, 801; State v. Ham, 24 S. D. 639, 124 N. W. 955, Ann. Cases 1912A, 1070. * * * We can see no distinction between the right to waive and the circumstances under which a party may waive such disqualification *before* having attempted to disqualify a judge, and the right to waive and the circumstances under which it may be done *after* the effort to disqualify. Our attention has not been called to any cases making such distinction, where the *right* to waive exists in the first instance. We hold, therefore, that as to all causes of action set forth, petitioners have waived the question of disqualification, regardless of whether they had at first appropriately or irregularly attacked it."

In State v. Garcia, 47 N. M. 319, 142 Pac. (2d) 552, 554, 149 A. L. R. 1394, defendant filed an affidavit of disqualification of the judge and the judge told his counsel that he would accept the disqualification. Later defendant withdrew his plea of not guilty and entered a plea of guilty before the disqualified judge, who sentenced him to the penitentiary. The court said, "the disqualification was waived when the defendant voluntarily appeared before him and asked him to accept a plea of guilty to second degree murder. The statutory disqualification may be waived, expressly or by implication." See also Nielson v. Garrett, 55 Idaho, 240, 43 Pac. (2d) 380.

The statutes involved in the foregoing cases are not exactly the same as ours but in all of them the judge as against whom the affidavit is filed is without authority to proceed further in the case and in that vital particular the point of law involved is the same as under our statute.

The case of Watson v. Payne, 94 Vt. 299, 111 A. 462, so strongly relied upon in the majority opinion, I think has noth-

ing to do with this case. There the Constitution provided: "Justices of the Supreme Court shall be Justices of the Peace throughout the State; and the several Judges of the County Court, in their respective counties, by virtue of their office, except in the trial of such causes as may be appealed to the County Court." Const. Vt. ch. 2, sec. 28. There was no question of bias or prejudice of the judge involved or the filing or withdrawal of an affidavit of disqualification. The court said: "The justice of the peace who tried this case and rendered judgment therein held that office at the time solely by virtue of this constitutional provision and the fact that he was an assistant judge of Bennington county court."

"The case was appealable to county court, and that being so, the justice had no authority to try and determine it." He was a justice of the peace except as the court said, "in the trial of such causes as may be appealed to the county court."

There could not have been a different conclusion in that case in view of the plain provision of the Constitution. The judge could not act as a matter of law. Other cases sustaining the same rule are Burns v. Burns, supra; Kline v. State, supra; State v. Perkins, 339 Mo. 27, 95 S. W. (2d) 75; In re Miller's Estate, 182 Okl. 534, 78 Pac. (2d) 819; Golos v. Worzalla, 178 Wis. 414, 190 N. W. 114; State ex rel. Richardson v. Keen, supra. Wherever the question concerning the right to withdraw an affidavit of prejudice and bias of the judge, or imputed bias and prejudice of a judge, has arisen in the courts of sister states it has been uniformly held that withdrawal of the affidavit was a removal of the disqualification and the waiver thereof. None to the contrary has been cited in the appellants' brief or in the majority opinion.

The expression in the majority opinion that the appellants did not consent to waive the disqualification, but expressly refused to do so, assumes a right in the appellants to stand upon the affidavit of disqualification interposed by an opposing litigant; that a right of waiver of disqualification was vested in the appellants. Such a doctrine would permit a party

to litigation to predicate error upon the waiver by an opponent of a personal privilege. It was not the rights of the appellant that were in anywise affected by his withdrawal of the affidavit of disqualification. Any one of the appellants had the right to file an affidavit under subdivision 4 of section 8868 had they desired the removal of the judge.

Each of the appellants had already waived the right to disqualify the judge for imputed bias and prejudice by not having exercised their right to do so. Moreover, counsel for appellants stated, "We do not feel that you are prejudiced, but we are standing on the record as it has been made by the proponents." As the record then stood, the objection was well taken, the withdrawal of the affidavit had not yet been made and no question of waiver of the disqualification by Wimett had yet been presented. Nor does the statute contemplate that the exercise of the privilege granted by subdivision 4 is the concern of any litigant other than the one who chooses to exercise the privilege. Notice of the filing of the affidavit is not required to be given to any other litigant in the case. State ex rel. Jenkins v. District Court, 32 Mont. 595, 81 Pac. 351; State ex rel. Lohman v. District Court, 49 Mont. 247, 141 Pac. 659.

The petition for creation of the irrigation district was set down for hearing for July 31, 1946. The affidavit imputing bias and prejudice to the judge was filed July 25, 1946, and for aught that appears in the record, none of the appellants had knowledge of the filing of the affidavit until after the time had expired for them to file one. The majority opinion states that "the disqualification [by Mr. Wimett] inured not only to the advantage of Wimett but it inured to the benefit of every party to the proceeding who believed he could not have a fair and impartial trial and hearing before said judge." There is nothing in the record to show that anyone other than Mr. Wimett at any time entertained a belief he could not have a fair trial before the presiding judge. Appellants, through their counsel, stated that they entertained no such belief, and coun-

sel for the proponents in withdrawing the affidavit, did so not only for Mr. Wimett and, although not required to do so, withdrew it as to all parties he represented. The affidavit filed by Mr. Wimett is limited to his own belief that he could not have a fair trial.

It may be that circumstances could arise where the withdrawal of an affidavit might result in prejudice to the rights of other litigants to file an affidavit within the time provided by the statute and thus cut off the privilege of one who desired to disqualify the judge for imputed bias. If so, the decision in State ex rel. Carroll v. District Court, 50 Mont. 506, 148 Pac. 312, affords protection. In any event, no such question was presented here for decision. I see no reason why the waiver cannot be made as well after the filing of the affidavit of disqualification as it could be before the exercise of the privilege to file it. I think Judge Besancon had authority to proceed and hear, try and determine the case and that the case should be determined upon its merits.

Mr. Justice Angstman:

I concur in the above dissenting opinion of Judge Berg.

On Petition for Rehearing

PER CURIAM.

A petition for a rehearing herein was denied May 25, 1948, and the following opinion rendered thereon:

1. In their petition for a rehearing counsel for respondents ▮▮▮▮ contend that our decision disregards the provisions of section 9191, Revised Codes of Montana of 1935, which admonishes the court to disregard any error or defect in the proceedings which does not affect the substantial rights of the parties and argue that, "it looks to us as if the Court had insisted upon a legalistic determination of this matter in disregard of the substantial rights of the parties." The above statute on which respondents rely has no application where jurisdiction is wanting (Choate v. Spencer, 13 Mont. 127, 136, 32 Pac. 651, 20 L. R. A. 424, 40 Am. St. Rep. 425) nor where substantial error

has been committed. Olcott v. Gebo, 54 Mont. 35, 166 Pac. 300. In the case at bar, immediately upon the filing of the affidavit of disqualification, the law stepped in and took from the judge against whom the affidavit was directed all his power, authority and jurisdiction to act further in the proceeding expressly commanding that he "must not sit or act as such" therein and further declaring that he "shall be without authority to act further in the * * * proceeding." Sec. 8868, Rev. Codes of Montana 1935.

Clearly the provisions of section 9191, Revised Codes of 1935, supra, are not applicable here where the substantial right of the litigants to have a fair trial before an impartial judge is involved.

Impartiality is the very foundation of the American judicial system and the public policy of this state on the subject of the disqualification of district judges is clearly determined by the legislative utterance found in section 8868, Revised Codes 1935.

Section 180 of the Code of Civil Procedure of 1895 provided for the disqualification of judges in the cases enumerated in subdivisions 1, 2 and 3 of section 8868, Revised Codes 1935. Those subdivisions were found to be inadequate to insure a fair trial before an impartial judge in many cases and on November 10, 1903, the governor of Montana, upon public demand therefor expressed in petitions from all parts of the state, issued a special proclamation convening the legislative assembly in extraordinary session for the express purpose of considering general legislation by which bias and prejudice of a district judge should effect the disqualification of such judge and prevent his sitting or acting as a judge in any action or proceeding in which such disqualification was properly and timely urged. Pursuant to such call of the governor the legislature convened in extraordinary session and amended section 180, supra, by adding thereto subdivision 4, being the Fair Trial Law. See Chapter 3 of the Second Extraordinary Session of 1903.

Later the statute was amended by the enactment of Chapter

114, Laws of 1909 and Chapter 93, Laws of 1927, now section 8868, Revised Codes of Montana 1935.

In State ex rel. Carleton v. District Court, 33 Mont. 138, 143, 82 Pac. 789, 790, 8 Ann. Cas. 752, this court in an opinion by Chief Justice Brantly, said: ''Furthermore it is the policy of our system that every litigant, no matter in what form his application may be presented to the court, shall have his rights adjudicated by a judge who is not interested in the result. It cannot be doubted for an instant that it would be perversion of justice for a judge to sit in any proceeding in the event of which he has an interest, whether such interest arise from the fact that he is a party in interest, directly or indirectly, or that he is related to one or more of the parties, or that he has theretofore been an attorney or counselor for one of the parties to the action or proceeding. Nor should he be allowed to sit, when he is laboring under bias or prejudice toward one or more of the parties litigant. By the amendment of section 180, supra, the Legislature has sought to provide a means by which this latter condition may be avoided. In doing so, it recognized the inherent difficulty of attaining this end, if a judge, possibly already biased or prejudiced, or in any event more or less affected by a feeling of offense arising out of the charge made against him by the litigant, be permitted to sit and try the question whether or not he is in fact biased, and, in its effort to meet a situation surrounded by so much difficulty, enacted the amendment to section 180, supra, which makes the imputation sufficient to require a change of judge, or, in default thereof, of the place of trial under section 615. Of the wisdom of its action there may be much doubt or question; but it must not be overlooked that *this ground of disqualification stands upon the same level of importance as do the others enumerated,* except 'as to the time when the imputation may be made, *and operates just as effectively, if invoked at the proper time.*'' (Emphasis supplied.)

2. In their petition counsel for respondents also urge ''that the Court has overlooked the facts in the case, which are clear-

ly apparent from the record, and which show how the affidavit came to be withdrawn." The petition for rehearing then states:

"As should be apparent from the record, the trial judge was prepared to proceed regardless of the affidavit, obviously on the theory that the affidavit was ineffective. The case was not an ordinary law suit, but a proceeding designed to establish an irrigation district and a matter affected with an important public interest. The speed required not only by the express terms of the irrigation district law, but by the circumstances arising out of an available federal appropriation made it essential that an immediate hearing be had. The petitioner who had filed the affidavit, and done so in good faith, together with the other petitioners was perforce confronted with the dilemma of either seeking supervisory control at a time when this court was not in session, or of abandoning and waiving his attempted disqualification so that prompt determination of the case might be had. That is why the affidavit was withdrawn, and it is believed that the record clearly shows that this is how the attempt to waive the disqualification came about."

The affidavit of the petitioner Wimett is clearly sufficient and the filing thereof effectively divested the judge against whom it was directed of all authority to further sit or act in the proceeding. It matters not that the trial judge was prepared to disregard the affidavit and the law and to do battle with any who should challenge his jurisdiction to proceed for no matter how well prepared he may have been, the law forbids his further acting in this proceeding. Upon the filing of the affidavit the law stripped him of power to try the issues or decide the case and further proceedings before him were coram non judice.

The provisions of subdivision 4 of section 8868, Revised Codes, apply not only to ordinary law suits but they apply to any "action, motion or proceeding" including matters affected with an important public interest as here.

We are not at all impressed with counsel's argument that be-

cause this court was not in session on August 6th when the matter came on for trial, affiant and the other petitioners were forced to abandon and waive the disqualification of the judge "so that prompt determination of the case might be had." The statute (sec. 8868) remained in full force and effect regardless of whether this court was in session or not and neither the affiant Wimett nor any other party to these proceedings was required to abandon, waive or surrender any of the rights or benefits conferred thereby. This court was in session at the time respondents filed their original petition and at the time the order was made setting such petition for hearing and for more than two weeks thereafter. The machinery of this court is fairly mobile and a quorum may be assembled on surprisingly short notice to deal with sudden and real emergencies, even in recess or vacation time. Hence neither Wimett nor any other petitioner was required to submit his cause to a disqualified judge for any of the reasons which respondents here assign.

Not only did respondents fail to apply to this court for any relief but they saw the judge whom they had disqualified take his place on the bench and sit in the case without registering any objection to such procedure and when counsel for appellants called the judge's attention to the fact that because of his disqualification he had no jurisdiction to try the case, counsel for respondents then sought to reinvest the disqualified judge with the power of which he had been shorn by addressing to him a motion for leave to withdraw the disqualifying affidavit. The Fair Trial Law did not permit the disqualified judge to act upon that motion and most assuredly it did not permit him to rule that the disqualifying affidavit "is out of the way in this case." The disqualified judge was without authority to sit or act as a judge in the proceeding and the order made by him from which this appeal was taken is void.

The petition for rehearing is denied.

Rehearing denied May 25, 1948.