DA 13-0673

IN THE SUPREME COURT OF THE STATE OF MONTANA

2014 MT 297N

IN THE MATTER OF:

C.A.O.,

    A Youth in Need of Care.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DN-12-16
Honorable Karen Townsend, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Meri K. Althauser, Montana Legal Justice, PLLC, Missoula, Montana

    For Appellee:

        Timothy C. Fox, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

        Fred R. Van Valkenburg, Missoula County Attorney, Missoula, Montana

        Submitted on Briefs:  October 15, 2014
               Decided:  November 12, 2014

Filed:

                      Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(d), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      B.K.D. (Mother) appeals from an order of the Fourth Judicial District, Missoula County, terminating her parental rights to her child, C.A.O.  We affirm.

¶3      We restate the following issues raised on appeal:

¶4      Whether the District Court abused its discretion when it terminated Mother's parental rights.

¶5      Whether the District Court properly presided over Mother's case.

¶6      In January 2012, C.A.O. was born premature, at 27 weeks gestation.  She remained in the neo-natal intensive care unit until April 2012 and continues to have extensive health care needs.  A month after C.A.O.'s birth, Mother moved to Washington State, leaving C.A.O.  She later returned to Montana in August 2012.

¶7      On March 1, 2012, the Department of Public Health and Human Services (Department) filed for emergency protective services for C.A.O. and adjudication as a youth in need of care.  The case was assigned to Judge Townsend, who was presiding over a separate case involving Mother's older daughter and the Department.  On June 5, 2012, Mother stipulated that C.A.O. was a youth in need of care.  Mother's attorney

agreed to a treatment plan on July 10, 2012. The treatment plan required Mother to participate in mental health services, parenting courses, medication management services, vocational rehabilitation, and to establish a safe home.

¶8 On January 10, 2013, Mother was accepted into Judge Larson's Family Treatment Court (FTC). Judge Larson accepted the case, but the following day the Department substituted Judge Larson pursuant to § 3-1-804, MCA, and the case was sent back to Judge Townsend.

¶9 On February 4, 2013, Judge Townsend issued a Notice, explaining that although Mother was participating in FTC, she would continue to preside over substantive issues. Judge Larson echoed this fact, stating, "Department 4[Townsend] retains jurisdiction over all substantive dispositive things, such as the petition to terminate." Mother did not object to the arrangement, although the Department did.

¶10 On March 4, 2013, Judge Townsend amended the treatment plan to include a provision permitting the FTC to "monitor and implement all provisions in the Mother's treatment plan with regard to visitation between Mother and Child as well as the Mother's Treatment." Again, Mother did not object to the amendment, however the Department did.

¶11 In the interim, on February 14, 2013, the Department petitioned to terminate Mother's parental rights to C.A.O. At Mother's request, the District Court continued the termination hearing to grant Mother more time to address her treatment plan goals. On

3

June 27, 2013, the Department renewed its petition for termination and Mother's request to continue the hearing was denied.

¶12 Testimony at the hearing established that Mother refused to address her serious mental health issues and parenting problems. Mother was ultimately discharged from parenting classes for failure to appear, despite having multiple opportunities to re-start the programs. Additionally, Mother was homeless, having voluntarily left a treatment-based housing unit. CFS worker Eden Roberts testified to Mother's expressed interest, but lack of actual follow-through. CFS worker Marilyn Thorn noted that Mother had failed to complete any treatment plan task. After a three-day hearing in August 2013, the District Court entered its findings terminating Mother's parental rights.

¶13 *Whether the District Court abused its discretion when it terminated Mother's parental rights.*

¶14 We review a district court's decision to terminate parental rights for abuse of discretion. *In re D.B.*, 2007 MT 246, ¶ 16, 339 Mont. 240, 168 P.3d 691. Findings of fact are reviewed for clear error and conclusions of law for correctness. *In re D.B.*, ¶ 18. A district court abused its discretion only if it "acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice." *In re D.B.*, ¶ 16 (citations omitted).

¶15 A court may order termination of parental rights upon a finding of clear and convincing evidence that the child is an adjudicated youth in need of care, an appropriate treatment plan has not been complied with or not been successful, and the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable

4

time. Section 41-3-609(1)(f), MCA. "A parent who does not object to a treatment plan's goals or tasks waives the right to argue on appeal that the plan was not appropriate." *In re H.R.*, 2012 MT 290, ¶ 10, 367 Mont. 338, 291 P.3d 583 (citations omitted).

¶16 Mother argues that the District Court erred in adopting the amended treatment plan. We will not consider arguments that are not properly preserved for appeal. Mother requested to participate in FTC and did not object to the amended treatment plan. She has waived the right to challenge its appropriateness on appeal.

¶17 We nevertheless note that clear and convincing evidence supports the finding that the treatment plan was appropriate. There is no bright-line test for appropriateness, but generally, the Court considers whether the parents were represented, whether they stipulated to the treatment plan, and whether the plan considers the problems facing the parent and the child. *In re A.C.*, 2001 MT 126, ¶ 26, 305 Mont. 404, 27 P.3d 960. Here, Mother was represented by counsel, she raised no concerns with the amended plan, and the plan specifically addressed the mother's mental health issues and the child's need for a safe home. Further, the District Court's findings of fact focused almost exclusively on tasks in the original treatment plan, which Mother concedes was appropriate.

¶18 Mother also argues that the Department gave her insufficient time to complete treatment court which, at its earliest can be completed within 12 months. A parent's enrollment in treatment court does not alleviate the need to make progress on a treatment plan. The Department became involved in March 2012, did not file its petition for termination until February 2013, and the termination hearing was more than a year after

Mother stipulated to the original treatment plan. Mother failed to take the necessary steps to address her mental health issues, obtain housing, or participate in parenting classes. The Department gave Mother ample time to complete her plan; however, Mother's own inability to meet treatment plan goals hindered her success.

¶19 Lastly, Mother argues that the Department did not make reasonable efforts to reunite the family. Section 41-3-423(1), MCA, requires the Department to make reasonable efforts to prevent the removal of the child and to reunify the family. For more than a year, the Department worked to reunite Mother and C.A.O. by providing mental health evaluations, counseling, parenting classes, supervised visitations, referrals for medication management, and social work support. Despite the multitude of services made available to Mother, she failed to utilize the services, frequently missed appointments, and ultimately did not complete any tasks.

¶20 *Whether the District Court properly presided over Mother's case.*

¶21 Mother argues that Judge Townsend lost subject matter jurisdiction after she made the referral to Judge Larson's Treatment Court. Mother maintains that the District Court violated § 3-1-804, MCA, when Judge Townsend "resumed jurisdiction" after Judge Larson was substituted. She characterizes both judges as "disqualified from the case."

¶22 Jurisdiction is a comprehensive term used to describe the court's power to hear and determine controversies.[1] *In re Woodside-Florence Irr. Dist.*, 121 Mont. 346, 352,

---

[1] The parties frame this issue as one of subject matter jurisdiction. Subject matter jurisdiction involves the court's power to hear certain types of cases. All district courts within the Fourth Judicial District have the power to hear abuse and neglect cases brought under Title 41, chapter 3, MCA. Section 41-3-103, MCA.

194 P.2d 241, 244 (1948). "For reasons of efficient judicial administration, when the basis for relinquishing jurisdiction of a cause disappears, the original judge should be able to resume hearing the case." *State ex rel. McKendry v. District Court,* 201 Mont. 244, 248, 653 P.2d 847, 849 (1982). Within a judicial district, district court judges have the flexibility to interchange their work between the judges. The Fourth Judicial District's rules of practice specifically provide for an interchange of cases whether due to absence, illness, or "upon the request of any judge." Rules of Practice, Forms and Orders, Mont. Fourth Judicial Dist., Rule 19.

¶23    Additionally, § 3-1-804, MCA, does not apply to Judge Townsend in this instance. A judge's power to act on the merits of the case is lost only after a party files a timely motion to substitute. Section 3-1-804(5), MCA. Here, there was no motion to substitute Judge Townsend. Rather, Judge Townsend invited Judge Larson to assume jurisdiction due to Mother's participation in FTC. When the Department exercised its right to substitute Judge Larson, the case properly returned to Judge Townsend. No subsequent motions to substitute were filed and Judge Townsend properly presided over the case.

¶24    For the foregoing reasons, we conclude that Judge Townsend had authority to preside over Mother's case. Additionally, the District Court did not abuse its discretion in terminating Mother's parental rights.

¶25    We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our Internal Operating Rules, which provides for memorandum opinions. The District

7

Court's findings of fact are supported by substantial evidence and the legal issues are controlled by settled Montana law, which the District Court correctly interpreted.

¶26     Affirmed.


                                        /S/ MIKE McGRATH

We Concur:


/S/ PATRICIA COTTER
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT