No. 90-579

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

JONATHAN R. KOHNE,

    Plaintiff and Appellant,

    v.

ROY YOST, a minor, and ROY YOST, SR.,
as guardian ad litem for
ROY YOST, a minor,

    Defendant and Respondent.

APPEAL FROM:   District Court of the Second Judicial District,
               In and for the County of Butte-Silver Bow,
               The Honorable Mark P. Sullivan, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                James P. Harrington, Attorney at Law,
                Butte, Montana

        For Respondent:

                Gary L. Walton, Poore, Roth & Robinson,
                Butte, Montana

**FILED**

SEP 25 1991

Filed:

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:   June 27, 1991

Decided:   August 25, 1991

_____
                Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant, Jonathan R. Kohne, appeals from an order of the District Court, Second Judicial District, Silver Bow County, denying his motions for New Trial, or to Amend Judgment or to Set Aside Verdict and Judgment and for Judgment Not Withstanding Verdict.

We reverse.

Appellant raises several issues. However, we hold the following issue to be dispositive:

Whether statements made by defense counsel in closing argument admitting negligence constitute a judicial admission dispositive on the issue of negligence.

On June 17, 1988, appellant Jon Kohne, age 21, and respondent Roy Yost, Jr., age 13, engaged in a game of combat with B.B. guns. Initially, Kohne and Yost were to help Kohne's mother move to a new residence. Bored with the task, Kohne and Yost decided to shoot B.B.'s at some pop cans, an old jeep battery, and windows. The testimony is unclear as to who suggested the "combat" game between the two participants. However, they did establish three rules. They were not to pump the B.B. guns more than five times, they were not to shoot above the shoulders, and they were to say "ouch" when they were hit by a B.B. The game ensued for several minutes outside the home until Kohne's sister arrived.

The combatants stopped playing and demonstrated their bruises to Kohne's sister. She scolded her brother for playing with B.B. guns instead of packing boxes. After a few minutes, they went

inside the house to the living room. Yost walked to the back bedroom, while Kohne and his sister continued to argue in the living room and kitchen.

After a few more minutes, Kohne walked through the kitchen towards the back bedroom of the house, where Yost was hiding with his B.B. gun. Kohne and his sister testified that as he approached the back bedroom, he was carrying boxes. Yost testified Kohne was carrying a B.B. gun. Yost was standing next to the bedroom door leading to the outside of the residence. John Kohne was standing next to the doorway leading from the kitchen to the bedroom. He saw Yost pointing the B.B. gun at him. The B.B. gun went off and shot Kohne in the lens of his left eye. Yost immediately apologized and stated he thought the safety was on. Kohne suffered extensive injuries to the eye, including permanent loss of the lens and permanent injury to the cornea and iris, as well as other physical and psychological damage.

Defense counsel originally claimed that Yost was firing in self-defense and that Kohne's intentional and malicious conduct constituted battery. Plaintiff was granted a directed verdict on defendant's counterclaim. At the close of all the evidence, defense counsel was allowed to amend his counterclaim to a negligence and comparative negligence theory.

During closing argument defense counsel made the following admissions:

It's our position that your decision on Roy Yost's negligence depends upon whether you find that Roy Yost was more negligent on the 17th of June than John Kohne.

(Transcript, p. 473.)

I submit to you that both of them are negligent. You're not going to have a lot of trouble with that very first question of negligence because, you bet, playing the game in and of itself, they were negligent. . . .

(Transcript, pp. 478-479.)

[T]hrow both sides of the lawsuit out, no liability, none. And the way you get there is you find that John Kohne being an adult, 21 years old, he knew better, he should have known better and the moment that the game started, he should have stopped it. And so when the game starts, he's more at fault, he's not equally at fault, he's more. He's 55, 60, 75 percent at fault for this game because when the game started and when the game continued, John Kohne continued it.

(Transcript, p. 492.)

He was at fault because he played the game too, but he's the 13-year-old boy and this man that started it all, he was more at fault.

(Transcript, p. 497.)

The jury found no negligence on the part of either the defendant or plaintiff. Plaintiff's counsel moved for judgment notwithstanding the verdict. The District Court denied the motion. Plaintiff's counsel timely filed motions for a New Trial, or to Amend Judgment or to Set Aside Verdict and Judgment and for Judgment Not Withstanding Verdict on the basis, among other issues, that there was insufficient evidence to support the verdict, and that defense counsel made admissions in his closing argument that defendant was negligent. In a memorandum and order dated August 14, 1990, the

4

District Court denied plaintiff's motions. It is from this order that plaintiff appeals.

Previously, we have held that counsel's admissions are binding upon the client.

> A party may appear in person or by an attorney; but, when he appears by attorney, the latter while acting as such has control and management of the case, and his sayings and doings in the presence of the court concerning the trial of the cause are the same as though said and done by the party himself.

State ex rel. Eden v. District Court (1939), 109 Mont. 263, 268, 95 P.2d 447, 449.

Judicial admissions are important because they have the effect of a confessory pleading. 9 Wigmore, Evidence, § 2588 (Chadbourn rev. 1981). A judicial admission is an express waiver made in court by a party or his attorney "conceding for the purposes of the trial the truth of some alleged fact." Wigmore at § 2588. The main characteristic of a judicial admission is the conclusive effect upon the party making the admission. No further evidence can be introduced to prove, disprove, or contradict the admitted fact. Wigmore at § 2590.

Judicial admissions may occur at any point during the litigation process. They may arise during discovery, pleadings, opening statements, direct and cross-examination, as well as closing arguments. Lowe v. Kang (Ill.App.Ct. 1988), 521 N.E.2d 1245, 1248. The district court must focus upon the statement itself, rather than on a certain stage of the litigation proceeding. Plaintiff's counsel, at the time of hearing on his motion for a new trial, asked

5

the court to rule that the admission in the final argument by defense counsel was a judicial admission of negligence. We note that a preferable procedure would have been for plaintiff's counsel to call that admission to the attention of the court and request the court to give modified instructions to the jury to reflect the admission of negligence.

To determine whether a statement is a judicial admission depends upon the circumstances of each case. Lowe, 521 N.E.2d at 1248. For a judicial admission to be binding, it must be an unequivocal statement of fact. Childs v. Franco (E.D.Penn. 1983), 563 F.Supp. 290, 292. The District Court should not consider statements of counsel's conception of the legal theories of the case to be binding. Childs, 563 F.Supp. at 292.

Defense counsel contends he was only arguing an alternative legal theory and merely suggesting that the defendant was negligent. Defense counsel's unequivocal statements, taken in full context with the rest of his closing argument, constituted judicial admissions on the issue of negligence binding his client. It is obvious from the record, that defense counsel changed tactics in order to win a favorable comparative negligence verdict. He amended his counterclaim to establish negligence and comparative negligence theories. Defense counsel's admissions reflect this change in legal position.

> It's our position that your decision on Roy Yost's negligence depends upon whether you find that Roy Yost was more negligent on the 17th of June than John Kohne.

(Transcript, p. 473.)

6

I submit to you that <u>both of them are negligent</u>. You are not going to have a lot of trouble with that very first question of negligence, because, <u>you bet, playing the game in and of itself they were negligent</u>. . . .

(Transcript, pp. 478-479, emphasis added.)

And so when the game starts, <u>he's more at fault, he's not equally at fault, he's more. He's 55, 60, 75 percent at fault</u> for this game because when the game started and when the game continued, John Kohne continued it.

(Transcript, p. 492, emphasis added.)

<u>He was at fault because he played the game too,</u> but he's the 13-year-old boy and this man that started it all, he was more at fault.

(Transcript, p. 497, emphasis added.)

Other than at the beginning of his closing argument, defense counsel failed to preface these admissions to the jury that the statements were only suggestions. Moreover, several times throughout the closing argument, defense counsel argues his client is negligent at least to some degree. Other uncontroverted evidence fails to support the jury's verdict. Yost pointed the gun at Kohne. Yost admitted that he thought that the safety was on. Yost had considerable training in the safe use of guns by his father and a hunter safety program and he admitted he did not follow that training when accidentally shooting Kohne.

We remand for a new trial.

_William E. Hunt_
Justice

7

We concur:

_____
**Chief Justice**

_____

_____

_____

_____

_____
**Justices**

Justice Fred J. Weber dissents as follows:

The majority concluded that the attorney's unequivocal statements in closing argument constituted a judicial admission of negligence by the defendant. As a result, the majority concluded that plaintiff deserved a new trial because of the absence of substantial evidence demonstrating there was no negligence on the part of the defendant.

I will first review the following elements of the trial in the order in which they actually occurred: the pertinent instruction to the jury; the closing argument by defense counsel, which the majority concludes is an admission of negligence; and the jury verdict.

In this case Court's Instruction No. 1 provided:

<u>You are the sole and exclusive judges of the facts</u>. You must consider and weigh the testimony of all witnesses. <u>You alone are to determine whether to believe any witnesses and the extent to which any witness should be believed</u>. It is your responsibility to resolve any conflicts in the testimony which may arise during the course of the trial.

Your determination of the facts in this case must be based upon the evidence regardless of who presented it. <u>Arguments, statements and remarks of attorneys are not evidence, and you should disregard any argument which is not supported by evidence</u>. You have a right to consider all the evidence in the light of your own general knowledge, experience and common sense, and to take into account whether any particular evidence seems reasonable and probable. (Emphasis supplied.)

I have concluded that it is necessary to set forth a more extended portion of the defense attorney's argument which the majority has concluded constitutes an admission of negligence. The following is taken from the transcript commencing at page 471:

9

Ladies and gentlemen, as you know, the closing argument is the time when the lawyers want to direct your attention to the evidence that's been admitted in this trial so that you understand the theories of their cases. I hope that in this time that I have with you now that we have the chance to try and figure out what happened on June 17th, 1988.

One thing I want you to keep in mind, however, is that as jurors in this case your function is to sift through all the facts in evidence that you've heard to this time and you make the decision as to what the facts were. I'm going to make some suggestions to you this morning about the facts based on the evidence that came in. . . .

Initially, let's talk about liability. Liability is what you must find before you ever get to the damages. You've seen Mr. Harrington and Mr. Kohne's large chart here where they've asked you for damages, but before you ever get to that question, you have to decide that Roy Yost did something wrong that day, that he was negligent. We don't dispute and we have never disputed that John Kohne was hurt on June 17th. . . . But what we're telling you is before you get to that point of deciding damages, you have to first decide that Roy Yost is liable as a matter of law. And that's going to be based on the facts as you determine them and the law that the Court gave you this morning.

It's our position that your decision on Roy Yost's negligence depends upon whether you find that Roy Yost was more negligent on the 17th of June than John Kohne. Let's look at those facts. We have a 21-year-old man invites a 13-year-old boy, a boy who has turned 13 six days before the accident, invites him over to his house -- or to his mother's former home to help him move. . . . Well, then if it's wrong for Roy Yost at 13 to shoot guns at someone else, it's wrong for John Kohne. . . .

\* \* \* \*

So, the question becomes was Roy negligent for playing the game? Was John negligent for playing the game? I submit to you the Court instructed you on the definition of negligence. Negligence is the failure to use reasonable care. I submit to you that both of them are negligent. You're not going to have a lot of trouble with that very first question of negligence because you bet, playing the game in and of itself, they were negligent, but did that negligence proximately cause some injury? I just think that two friends shooting at each other is unreasonable. . . .

\* \* \* \*

10

Roy admitted under questioning by Mr. Harrington very clearly, "I did not intend to hurt him." And I'm sure he didn't. He also said in his testimony, "I didn't even aim the gun." Is that negligence when the game is being played? Is that negligence? I submit to you that it's not. He didn't aim the gun because when he stuck his head out from behind the door, what does he see? John at the doorway with the pistol, it's in his hand. How long is he out there, a minute, a second? Does he have time to know if it's actually pointed at him? Who knows. That's a fraction of a second that we'll probably never be able to recreate. But he jumped out from behind the door, stuck the gun out and fired it. And I think that just like the rest of the game, Roy didn't mean to hurt John when John got hurt, just like John didn't mean to hurt Roy when he shot Roy in the chest and the shoulder.

* * * *

And we respectfully ask you to go into the jury room, pick your foreman and decide there was no fault, greater fault, on Roy Yost. He was at fault because he played the game too, but he's the 13-year-old boy and this man that started it all, he was more at fault. Thank you.

The Special Verdict as set forth in the court's judgment is as follows:

1. Do you find that the defendant was negligent on June 17, 1988? ANSWER: "No"

6. Do you find that the plaintiff was negligent on June 17, 1988? ANSWER: "No"

Keeping in mind the court's instruction that the jurors are the sole and exclusive judges of the facts and that arguments and statements of attorneys are not evidence and should be disregarded if not supported by the evidence, I will discuss the statements by counsel in the course of argument. I believe it essential to keep in mind that counsel did not suggest that only the defendant was negligent. His statements essentially set forth his contention that both the plaintiff and the defendant were negligent in playing

11

the game of shooting BB guns at each other. I don't see how that can be construed as an admission of negligence only on the part of the defendant. In addition, the majority has not considered the further conflict in the facts as presented by both sides - the plaintiff presented evidence to establish that the game of BB gun shooting was actually ended. If the jury accepted the plaintiff's evidence, then the negligence in playing the game, as admitted, is irrelevant to the question of whether or not the defendant negligently shot the plaintiff after the game had terminated. The key is that the statements by counsel cannot be construed as an admission that the defendant's negligence in playing the BB gun game was the proximate cause of the plaintiff's injuries.

I further contend that the holding in the case of Brown by Brown v. Markve (1985), 216 Mont. 145, 700 P.2d 602, is contradictory to the majority holding in this case. In part the Court stated in <u>Brown:</u>

> The court then concluded that this argument to the jury had the legal effect of an admission against interest which set the lower limits of the verdict at $30,000. No citation of legal authority is cited for that conclusion. In addition, the conclusion of the trial court contradicts its own Instruction No. 1 which in part stated as follows:
>
>> Statements of counsel are not to be regard by you as evidence and you will disregard any such statements which are not supported by the evidence received upon this trial.
>
> By his argument, the defense counsel obviously sought to encourage the jury to reach a lower verdict because of the presence of an admission of liability on the part of his client. However, that suggestion cannot be classed as evidence or an admission against interest which set a floor of $30,000 below which the jury could not go. The jury remained the finder of fact with the right to set the damages at $25,000 or such other figure as the jurors might conclude to be appropriate under the evidence.

*Brown*, 216 Mont. at 147, 700 P.2d at 603. The instruction in the present case emphasizing that the jury is the trier of fact and is to disregard the statements of counsel is even broader than the above quoted instruction from *Brown*.

The majority relies on *Brown* to conclude there was no substantial evidence to support the jury's verdict. I fail to see how *Brown* supports the majority opinion. I fail to see how the admission by defense counsel that both plaintiff and defendant were negligent in playing the BB gun game negatives the capacity of the jury to reach its own decision as to the negligence of both participants, particularly in view of the right on the part of the jury to conclude the game had previously ended. As previously set forth, defense counsel prefaced his so-called admissions by explaining to the jury that they were the ultimate fact finders and stating that his arguments were suggestions.

I conclude that the effect of the majority opinion in its conclusion that the argument of defense counsel constitutes an admission which is binding, directly contradicts the law of the case, Court's Instruction No. 1, and is inaccurate when all of the closing argument is considered. I would affirm the conclusion of the District Court upholding the verdict of the jury and denying plaintiff's motion for a new trial.

_____
Justice

13